36 P.3d 814

In the Matter of the Tax Appeal of COS-
MO WORLD OF HAWAII, INC., Kaupu-
lehu Makai Venture, Kaupulehu Water
Company, and Kaupulehu Waste Water
Company, Appellants,

v.

Marie OKAMURA, Director of Taxation,
State of Hawaii, Appellee.

No. 23649.

Intermediate Court of Appeals of Hawai'i.

Oct. 9, 2001.

Certiorari Denied Nov. 19, 2001.

As Amended Dec. 19, 2001.

Stanley Y. Mukai, Kenneth G.K. Hoo, Rob-
ert G. Klein, Peter J. Hamasaki (McCorri-
ston Miller Mukai MacKinnon), Honolulu, on
the briefs, for appellants.

Christopher J. Muzzi, Deputy Attorney
General, on the briefs, for appellee.

WATANABE, ACTING C.J., LIM, and
FOLEY, JJ.

Opinion of the Court by LIM, J.

Appellants Cosmo World of Hawaii, Inc.
(Cosmo World), Kaupulehu Makai Venture
(KMV), Kaupulehu Water Company (KWC)
and Kaupulehu Waste Water Company
(KWWC) appeal the July 25, 2000 judgment

of the tax appeal court [1] and the underlying December 30, 1999 order that granted the motion for summary judgment filed by Appellee Director of Taxation, State of Hawai'i (the Director) and denied the motion for summary judgment filed by Appellants.

We conclude the court correctly decided that Cosmo World waived its right to a capital goods excise tax credit refund when it failed to file a timely claim for the credit, as required by Hawaii Revised Statutes (HRS) § 235–110.7. We therefore affirm the court's judgment and order.

## I. The Statute.

HRS § 235–110.7 (1993) provides:

**Capital goods excise tax credit.** (a) There shall be allowed to each taxpayer subject to the tax imposed by this chapter a capital goods excise tax credit which shall be deductible from the taxpayer's net income tax liability, if any, imposed by this chapter for the taxable year in which the credit is properly claimed.

The amount of the tax credit shall be determined by the application of the following rates against the cost of the eligible depreciable tangible personal property used by the taxpayer in a trade or business and placed in service within Hawaii after December 31, 1987. For calendar years beginning after: December 31, 1987, the applicable rate shall be three per cent; December 31, 1988, and thereafter, the applicable rate shall be four per cent, except that for the period January 1, 1993, through December 31, 2002, and for eligible depreciable tangible personal property used in a trade or business that is purchased in a county in which the county general excise and use tax surcharge is in effect and placed in service in any county the applicable rate shall be four and one-half per cent. For taxpayers with fiscal taxable years, the applicable rate shall be the rate for the calendar year in which the eligible depreciable tangible personal property used in the trade or business is placed in service within Hawaii.

In the case of a partnership, S corporation, estate, or trust, the tax credit allowable is for eligible depreciable tangible personal property which is placed in service by the entity. The cost upon which the tax credit is computed shall be determined at the entity level. Distribution and share of credit shall be determined by rules.

In the case of eligible depreciable tangible personal property for which a credit for sales or use taxes paid to another state is allowable under section 238–3(i), the amount of the tax credit allowed under this section shall not exceed the amount of use tax, and for the period January 1, 1993, through December 31, 2002, the amount of the county general excise and use tax surcharge, actually paid under chapter 238 relating to such tangible personal property.

If a deduction is taken under section 179 (with respect to election to expense certain depreciable business assets) of the Internal Revenue Code of 1954, as amended, no tax credit shall be allowed for that portion of the cost of property for which the deduction was taken.

(b) If the tax credit is claimed by a taxpayer at the rate of four and one-half per cent, and the tangible personal property is purchased in a county in which the county general excise and use tax surcharge is not in effect, there shall be added to and become part of the tax liability of the taxpayer:

(1) The amount of the tax credit claimed under this section multiplied by three; or

(2) Ten per cent of the income tax liability for the taxable year for which the income tax return is being filed,

whichever is greater.

If the capital goods excise tax credit allowed under subsection (a) exceeds the taxpayer's net income tax liability, the excess of credit over liability shall be refunded to the taxpayer; provided that no refunds or payment on account of the tax

---

1. The Honorable Gary W.B. Chang presided over this tax appeal.

credit allowed by this section shall be made for amounts less than $1.

All claims for tax credits under this section, including any amended claims, must be filed on or before the end of the twelfth month following the close of the taxable year for which the credits may be claimed. Failure to comply with the foregoing provision shall constitute a waiver of the right to claim the credit.

(c) Application for the capital goods excise tax credit shall be upon forms provided by the department of taxation.

(d) Sections 47 (with respect to dispositions of section 38 property and the recapture percentages) of the Internal Revenue Code of 1954, as amended, as of December 31, 1984, and 280F as operative for this chapter (with respect to limitation on investment tax credit and depreciation for luxury automobiles; limitation where certain property used for personal purposes) of the Internal Revenue Code of 1954, as amended, shall be operative for purposes of this section.

(e) As used in this section, the definition of section 38 property (with respect to investment in depreciable tangible personal property) as defined by section 48(a)(1)(A), (a)(1)(B), (a)(3), (a)(4), (a)(7), (a)(8), (a)(10)(A), (b), (c), (f), (l), (m), and (s) of the Internal Revenue Code of 1954, as amended as of December 31, 1984, is operative for the purposes of this section only.

As used in this section:

"Cost" means (1) the actual invoice price of the tangible personal property, or (2) the basis from which depreciation is taken under section 167 (with respect to depreciation) or from which a deduction may be taken under section 168 (with respect to accelerated cost recovery system) of the Internal Revenue Code of 1954, as amended, whichever is less.

"Eligible depreciable tangible personal property" is section 38 property as defined by the operative provisions of section 48 and having a depreciable life under section 167 or for which a deduction may be taken under section 168 of the federal Internal Revenue Code of 1954, as amended.

"Placed in service" means the earliest of the following taxable years:

(1) The taxable year in which, under the:

    (A) Taxpayer's depreciation practice, the period for depreciation; or

    (B) Accelerated cost recovery system, a claim for recovery allowances; with respect to such property begins; or

(2) The taxable year in which the property is placed in a condition or state of readiness and availability for a specifically assigned function.

"Purchase" means an acquisition of property.

"Tangible personal property" means tangible personal property which is placed in service within Hawaii after December 31, 1987, and the purchase or importation of which resulted in a transaction which was subject to the imposition and payment of tax at the rate of four per cent, except that for the period January 1, 1993, through December 31, 2002, and if the county general excise and use tax surcharge is in effect the tax rate shall be four and one-half per cent, under chapter 237 or 238. "Tangible personal property" does not include tangible personal property which is an integral part of a building or structure or tangible personal property used in a foreign trade zone, as defined under chapter 212.

## II. The Operative Facts.

On January 28, 1999, Appellants filed a notice of appeal to the tax appeal court from the Director's January 1, 1999 denial of Cosmo World's claim for a $641,621.00 refund[2] of income taxes on account of the capital goods excise tax credit established by HRS

---

**2.** Hawaii Revised Statutes (HRS) § 235–110.7(b) (1993) provides, in relevant part, that "[i]f the capital goods excise tax credit allowed under subsection (a) exceeds the taxpayer's net income tax liability, the excess of credit over liability shall be refunded to the taxpayer; provided that no refunds or payment on account of the tax credit allowed by this section shall be made for amounts less than $1."

§ 235–110.7. The notice of appeal to the court alleged, in pertinent part, as follows:

1. [Cosmo World] is a Hawaii corporation with its principal place of business and mailing address [in California].

2. [KMV] is a California partnership with its principal place of business [and mailing address in Hawai'i].

3. [KWC] is a Hawaii partnership with its principal place of business [and mailing address in Hawai'i].

4. [KWWC] is a Hawaii partnership with its principal place of business [and mailing address in Hawai'i].

5. As of December 31, 1996, Cosmo World was a general partner in KMV, holding a 50% interest in profits, losses and capital of KMV. During 1996, KMV was engaged in the business of real estate development and related activities in Hawaii.

6. During 1996, KMV was a partner in KWC and KWWC.

7. During 1996, KWC and KWWC were engaged in certain real estate activities in Hawaii.

8. During 1996, KMV acquired and/or placed in service certain property costing $21,166,179 and qualifying for the capital goods excise tax credit under [HRS § 235–110.7] (the "Tax Credit").

9. During 1996, KWC acquired and/or placed in service certain property qualifying for the Tax Credit, KMV's share being $6,915,648.

10. During 1996, KWWC acquired and/or placed in service certain property qualifying for the Tax Credit, KMV's share being $2,916,388.

11. This is an appeal from the denial made by the [Director] on January 1, 1999 of Cosmo World's claim for refund of corporate income tax in the amount of $641,621 for the tax year ending December 31, 1996. . . .

12. On or about August 25, 1997, KMV filed Form N–20, State of Hawaii—Department of Taxation, Partnership Return of Income ("Form N–20") for 1996. Attached as part of Form N–20 was Form N–312,[3] State of Hawaii—Department of Taxation, Capital Goods Excise Tax Credit, which indicated that KMV had total cost of eligible property qualifying for the Tax Credit in the amount of $30,998,215 and was entitled to Tax Credit in the amount of $1,239,929.

13. Attached to KMV's Form N–20 for 1996 was Schedule K–1, State of Hawaii—Department of Taxation, Partner's Share of Income, Credits, Deductions, Etc.—1996 ("Schedule K–1") which indicated that Cosmo World held a 50% profit, loss and capital interest in KMV.

14. Attached to KMV's form N–20 for 1996 was Form N–312A, State of Hawaii—Department of Taxation, Information Statement Concerning the Capital Goods Excise Tax Credit. Such Form N–312A indicated that Cosmo World's share of property qualifying for the Tax Credit was $16,040,525.

15. Attached to KMV's Form N–20 for 1996 was Form N–312A, State of Hawaii—Department of Taxation, Information Statement Concerning the Capital Goods Excise Tax Credit which indicated that KMV was entitled to Tax Credit based upon its apportioned cost of qualifying property of KWC in the amount of $6,915,648.

16. Attached to KMV's Form N–20 for 1996 was Form N–312A, State of Hawaii—Department of Taxation, Information Statement Concerning the Capital Goods Excise Tax Credit which indicated that KMV was entitled to Tax Credit based upon its apportioned cost of qualifying property of KWWC in the amount of $2,916,388.

---

**3.** Hawaii Administrative Rules (HAR) § 18–235–110.7–20(b) (1990) requires that "[t]he claim for the [capital goods excise tax] credit shall be made on Form N–312." HAR § 18–235–110.7–20(d) (1990) requires that "[i]n the case of a taxpayer who is involved in a pass-through entity (i.e., partnership, S corporation, estate, or trust) and who claims a [capital goods excise tax] credit for the entity's eligible property, the taxpayer shall attach to Form N–312, a copy of the Schedule K–1 and any other statement (relating to the credit) which is provided by the pass-through entity."

17. On or before November 5, 1997, Cosmo World advised its certified public accountant and tax return preparer, Hotta & Co., A.C., to prepare Cosmo World's 1996 Hawaii corporate income tax return and obtain a refund of tax because of the Tax Credit.

18. On or about December 10, 1998, Cosmo World filed Form N–30, State of Hawaii—Department of Taxation, Corporation Income Tax Return for 1996 claiming the Tax Credit in the amount of $641,621.

19. The [Director's] Notice of Disallowance disallowed Cosmo World's claim for refund on the basis that the claim for the Tax Credit was not timely made.

20. The disallowance of Cosmo World's claim for refund of corporate income tax attributable to the Tax Credit is erroneous and contrary to applicable law and equity.

(Footnote added.) Upon the foregoing allegations, Appellants prayed that the court find and declare that the Director's denial of Cosmo World's claim was "erroneous, unlawful, invalid and void." In addition, Appellants prayed that the court order the Director to refund them $641,621.00, with interest.

The foregoing allegations were essentially undisputed below and remain so on appeal, with one exception. The Director did not and does not concede that the investments alleged and their dollar amounts were indeed for property qualifying for the capital goods excise tax credit placed in service in 1996. Because the tax appeal court decided the case on the basis of Cosmo World's untimely claim, the qualification question never came to issue below. Similarly, because we dispose of this appeal on the basis of Cosmo World's untimely claim, and because the record is in any event insufficient for any determination, we need not, cannot and do not reach the qualification question. We merely assume, for the nonce and *arguendo*, that the disputed allegations are fact.

In addition to the foregoing, the record reveals additional, undisputed facts.

Cosmo World is a subsidiary of Cosmo World Corporation and Subsidiaries (Cosmo Parent), a California corporation. On December 31, 1997, Cosmo Parent filed its 1996 consolidated corporation income tax return, which stated that its subsidiary Cosmo World had sustained a taxable loss of $22,215,480.00 in 1996 and therefore owed no income tax for that year. On October 18, 1999, however, Cosmo Parent filed an amended consolidated return for 1996 showing a $641,621.00 refund due. Attached was a Form N–312 showing a corresponding capital goods excise tax credit. The amended return explained: "Taxpayer is a partner in [KMV]. On its original tax return, taxpayer inadvertently failed to take its share of the partnership's Capital Goods Excise Tax Credit."

The Cosmo World corporation income tax return, Form N–30, filed on or about December 10, 1998, that contained Cosmo World's Form N–312 capital goods excise tax credit claim, was "[f]or calendar year 1996 ... beginning January 1, 1996 and ending December 31, 1996[.]" The Director denied the claim because "[c]laims for credits (including amended) must be filed on/or before the end of the twelfth month following the close of the taxable year for which the credit may be claimed."

Cosmo World's partner in KMV is Kajima Kona Company (Kajima), a California corporation. Apparently, the Director in 1998 allowed Kajima a share of the KMV partnership's aggregate capital goods excise tax credit, upon a timely claim Kajima made in 1997.

On November 18, 1999, Cosmo World and the Director filed dueling motions for summary judgment. After the December 6, 1999 hearing on the motions, the court filed its December 30, 1999 order granting the Director's motion and denying Cosmo World's motion. The court held, in relevant part:

1. [HRS] § 235–110.7 is clear and specific.

2. HRS § 235–110.7 requires a taxpayer to file a claim for the general excise tax credit within twelve months of the close of the taxable year for which the credit may be claimed.

3. [Cosmo World] was claiming the general excise tax credit for calendar year ended 1996.

4. [Cosmo World's] filing of a formal claim for the general excise tax credit in 1998 did not comply with HRS § 235–110.7's twelve (12) month deadline for claiming for the credit.

5. HRS § 235–110.7 specifically provides that the general excise tax credit is waived if the claim for the credit is not timely filed.

6. [Cosmo World] did not timely file a claim for the general excise tax credit under the facts in this case.

ACCORDINGLY, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED that the Director's Motion for Summary Judgment is hereby GRANTED and [Cosmo World's] Motion for Summary Judgment is hereby DENIED.

(Capitalization in the original.)

After Cosmo World's first appeal to the supreme court was dismissed for lack of appellate jurisdiction, the tax appeal court entered a final judgment on July 25, 2000, from which Cosmo World took this timely appeal, noticed on August 7, 2000.

## III. Standards of Review.

Because there is no real and relevant controversy between the parties as to the foregoing assumed and undisputed facts, we review the tax appeal court's decision under the right/wrong standard:

[I]t is well settled that, "in reviewing the decision and findings of the Tax Appeal Court, a presumption arises favoring its actions which should not be overturned without good and sufficient reason. The appellant has the burden of showing that the decision of the Tax Appeal Court was 'clearly erroneous.'" *Weinberg v. City and County of Honolulu,* 82 Hawai'i 317, 322, 922 P.2d 371, 377 (1996) (citation omitted). Inasmuch as the facts here are undisputed and the sole question is one of law, we review the decision of the Tax Appeal Court "under the right/wrong standard." *Id.* (citation omitted); *Maile Sky Court Co., Ltd. v. City and County of Honolulu,* 85 Hawai'i 36, 39, 936 P.2d 672, 675 (1997) ("The interpretation of a statute is a question of law.").

*Kamikawa v. Lynden Air Freight, Inc.,* 89 Hawai'i 51, 54, 968 P.2d 653, 656 (1998). Insofar as the question of law here involved is one of statutory construction, we are guided by the following principles:

"The interpretation of a statute is a question of law reviewable *de novo.*["] *Franks v. City & County of Honolulu,* 74 Haw. 328, 334, 843 P.2d 668, 671 (1993).

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. HRS § 1–15(1)(1993). Moreover, the courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray v. Administrative Dir. of the Court,* 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997) (internal citations, quotation marks, brackets, ellipses, and footnote omitted).

This court may also consider "the reason and spirit of the law, and the cause which induced the legislature to enact it[ ] . . . to discover its true meaning." *Id.* at 148 n. 15, 931 P.2d at 590 n. 15; HRS § 1–15(2) (1993).

Also, this court is bound to construe statutes so as to avoid absurd results. *Keliipuleole v. Wilson,* 85 Hawai'i 217, 222, 941 P.2d 300, 305 (1997). "A rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable[,] impracticable . . . inconsisten[t], contradict[ory], and illogical[ ]." *Id.* at 221–

22, 941 P.2d at 304–05 (original brackets and citation omitted) (brackets added).

*Amantiad v. Odum,* 90 Hawai'i 152, 160–61, 977 P.2d 160, 168–69 (1999). Furthermore,

> **Laws in pari materia.** Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.

HRS § 1–16 (1993). *See also State v. Rauch,* 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000).

## IV. Discussion.

### A. *Cosmo World's Claim Was Untimely.*

■ On appeal, Cosmo World first contends that its claim for the capital goods excise tax credit was not untimely. In support of this contention, Cosmo World argues as follows:

> In this case, as indicated in [KMV's] filing with the Director, the qualifying property was purchased in 1996. As discussed *infra,* a claim for a Tax Credit, *as a matter of practice,* cannot be made until *after* 1996. Accordingly, the earliest year that a claim for a credit could have been made was 1997. Subsection (a) of [HRS § 235–110.7] refers to the credit being allowed *"for* the taxable year *in* which the credit is properly claimed." In this case, the first year in which the credit could be claimed was *1997.* Subsection (b) of [HRS § 235–110.7] also states that all claims must be filed within twelve months "following the close of the taxable year *for* which the credits may be claimed." [HRS § 235–110.7(b) ]. As noted above, under subsection (a), the taxable year for which the credits may be claimed was *1997.* Thus, Appellants had until 12 months following the end of *1997* to file their claims for the Tax Credit, *i.e.,* until 1998. There is no dispute [Cosmo World] filed all of the forms required by the Director to recognize its share of [KMV's] Tax Credit by the end of 1998 *at the latest.* Accordingly, [Cosmo World's] claim for recognition of

its share of [KMV's] Tax Credit was clearly timely.

The statute makes a distinction between the year in which (a) the facts establishing the credit take place (*i.e.,* the transactional year), (b) when the credit may be claimed (*i.e.,* the year following the transactional year—when all the facts are in), and (c) the twelve month period after the year when a credit may be claimed (*i.e.,* the year when the taxpayer must make a claim for the credit.) In the instant case, the taxable period or year "for which the credits may be claimed" must be the year *after* the occurrence of *all* the facts evidencing the taxpayer's legal right to the tax credits. The rationale for this makes administrative sense: if claims can be made at any time during the course of the year when the facts occurred, then the claim might be made again if new facts are developed in the same year. The government might face multiple claims in the same year. Further, a finding on the first claim might not be *res judicata.* The rationale for the statutory mechanism is administrative efficiency and practicality. Here, the facts establishing the claim (i.e., the transactional year) occurred in 1996. Therefore, 1997 was the first year in which [Cosmo World] might have filed its claim for a credit based on the facts established in 1996. [Cosmo World's] claim, filed in 1998, was therefore filed within twelve (12) months of 1997, the first year in which it might have made the claim.

Opening Brief at 11–12 (record citations omitted; emphases and typesetting in the original).

This is a remarkable argument, but not because it is correct. If, as Cosmo World contends, the taxable year for which the credit may be claimed was 1997, then we are hard put to reconcile the fact that its claim was for the taxable year 1996. The lagging recognition of the credit contended for would also fly in the face of the legislature's intent that "the new business to which this credit is particularly directed will receive the benefit of the credit when it will do the most good, that is, in the early, cash-poor years."[4] Sen.

---

4. Referring specifically to the decision to allow a refund of excess credit rather than a carryover to

subsequent years, embodied in HRS § 235–

Conf. Comm. Rep. No. 112, in 1987 Senate Journal, at 878.

Cosmo World's argument takes the plain and unambiguous language of the tax offset provision of HRS § 235–110.7(a), and the plain and unambiguous language of the claim deadline provision of HRS § 235–110.7(b), and conflates the two.

The former says nothing about when a credit must be claimed. It merely identifies which tax liability may be offset by the capital goods excise tax credit:

> There shall be allowed to each taxpayer subject to the tax imposed by this chapter a capital goods excise tax credit which shall be deductible from the taxpayer's net income tax liability, if any, imposed by this chapter [5] for the taxable year in which the credit is properly claimed.

HRS § 235–110.7(a) (footnote added). And this is true of the many other tax credit provisions in our income tax law that utilize virtually identical language to identify which tax liability may be offset by the subject tax credit. *See, e.g.*, HRS § 235–5.6(a) (Supp. 2000) (individual development account contribution tax credit "shall be applied against the taxpayer's net income tax liability, if any, imposed by this chapter for the taxable year in which the credit is properly claimed"); HRS §§ 235–17(a) & 235–17(b) (Supp.2000) (motion picture and film production costs credit "shall be deductible from the taxpayer's net income tax liability, if any, imposed by this chapter for the taxable year in which the credit is properly claimed").

When the capital goods excise tax credit must be claimed, in turn, is specified by the latter, HRS § 235–110.7(b), which provides, in pertinent part:

> 110.7(b). Sen. Conf. Comm. Rep. No. 112, in 1987 Senate Journal, at 878.

**5.** "[T]his chapter" refers to HRS chapter 235 (1993 & Supp.2000), entitled, "Income Tax Law."

**6.** *See Oleson v. Borthwick*, 33 Haw. 766, 769 (1936) ("Taxable year is defined as the calendar year or the fiscal year ending during such calendar year on the basis upon which the income is computed by the taxpayer. The taxable year ends on the 31st day of December of the year in which the income is received."); HRS § 235–1

> All claims for tax credits under this section, including any amended claims, must be filed on or before the end of the twelfth month following the close of the taxable year for which the credits may be claimed. Failure to comply with the foregoing provision shall constitute a waiver of the right to claim the credit.

And this textual separation of tax offset provision from claim deadline provision obtains in essentially identical language in many other tax credit provisions of our income tax law. *See, e.g.*, HRS § 235–5.6(c) (Supp.2000) (with respect to the individual development account contribution tax credit, "[a]ll claims, including any amended claims, for tax credits under this section shall be filed on or before the end of the twelfth month following the close of the taxable year for which the credit may be claimed. Failure to comply with the foregoing provision shall constitute a waiver of the right to claim the credit"); HRS § 235–17(d) (which includes, with respect to the motion picture and film production costs credit, the same waiver provision).

Tortuous logic is not necessary to interpret the capital goods excise tax credit statute. A straight reading of HRS § 235–110.7 yields a clear and simple result in this case. Cosmo World filed its tax credit claim for calendar year 1996. Hence, Cosmo World's claim for that taxable year [6] had to be filed "on or before the end of the twelfth month following the close of the taxable year for which the credits may be claimed[,]" HRS § 235–110.7(b), or December 31, 1997. Had Cosmo World done so, its tax credit would have been "deductible from [its] net income tax liability, if any, imposed by [HRS chapter 235] for the taxable year in which the credit is properly claimed," or 1996.[7] HRS § 235–110.7(a).

(1993) (defining "taxable year," in pertinent part, as "the calendar year or the fiscal year ending during such calendar year upon the basis of which income is computed under this chapter").

**7.** Again and in this respect, we are assuming *arguendo* that the investments and their dollar amounts were for qualifying property, and that they were "placed in service" in 1996. HRS § 235–110.7(a) (1993) (in pertinent part, "[i]n the case of a partnership, ... the [capital goods excise] tax credit allowable is for eligible depreciable tangible personal property which is placed in service by the entity"); HAR § 18–235–110.7–

Instead, Cosmo World filed its claim at the end of 1998, and its tardiness "constitute[d] a waiver of the right to claim the credit." HRS § 235–110.7(b).

If the language of the statute is not sufficiently pellucid in this respect, we observe that the Director's department of taxation is empowered by the legislature to promulgate rules and regulations, having the force and effect of law, for the enforcement of HRS chapter 235:

> **Rules and regulations.** Except as otherwise provided in this chapter, the department of taxation shall prescribe and have printed all needful rules and regulations for the enforcement of this chapter and such rules and regulations so made shall have the force and effect of law if they be not in conflict with the express statutory provisions to which the same are applicable.

HRS § 235–118 (1993). *See also State v. Kotis,* 91 Hawai'i 319, 331, 984 P.2d 78, 90 (1999) ("Administrative rules, like statutes, have the force and effect of law." (Citations omitted.)).

Hawaii Administrative Rules (HAR) § 18–235–110.7–02(b) (1990) provides that the capital goods excise tax credit "shall be allowed only for the first taxable year in which the property is placed in service by the taxpayer." *Cf.* HRS § 235–110.7(a) (in pertinent part, "[i]n the case of a partnership, . . . the tax credit allowable is for eligible depreciable tangible personal property which is placed in service by the entity"). So much for Cosmo World's contention that the "taxable year in which the credit is properly claimed[,]" HRS § 235–110.7(a), is the year in which the claim is filed. That settled, HAR § 18–235–110.7–20(a) (1990) requires that "[a] claim for the [capital goods excise tax] credit, including an amended claim, must be filed on or before the end of the twelfth month following the close of the taxable year for which the credit may be claimed, or if an extension of time for filing a return has been granted, within the extension period." *Cf.* HRS § 235–110.7(b) ("All claims for tax credits under this section, including any amended claims, must be filed

02(b)(1990) ("The [capital goods excise tax] credit shall be allowed only for the first taxable year

on or before the end of the twelfth month following the close of the taxable year for which the credits may be claimed. Failure to comply with the foregoing provision shall constitute a waiver of the right to claim the credit.").

We conclude the tax appeal court was right to deem Cosmo World's claim for the capital goods excise tax credit untimely. Hence, Cosmo World waived its right to claim the credit.

## B. Cosmo World's Untimely Claim Cannot Be Allowed.

Appellants also argue, however, that even if Cosmo World's claim was not timely under HRS § 235–110.7(b), it was nevertheless allowable for five independent and sufficient reasons: (1) the "informal claim" doctrine, (2) the "substantial compliance" doctrine, (3) principles of agency, (4) principles of contract, and (5) constitutional due process. We disagree, and explain our disagreements seriatim.

### 1. The "Informal Claim" Doctrine Does Not Apply To This Case.

With respect to the "informal claim" doctrine, we first note that Hawai'i courts have yet to adopt this judge-made exception, *United States v. Commercial National Bank of Peoria,* 874 F.2d 1165, 1171 (7th Cir.1989), that has been applied predominantly in federal tax refund cases. Appellants thus implicitly urge us to decide whether to adopt the "informal claim" doctrine as a safe harbor for State taxpayers. We need not do so because the assumed and undisputed facts in this case do not warrant its application in any event.

The United States Supreme Court has described an "informal claim" as

> a notice fairly advising the [taxing authority] of the nature of the taxpayer's claim, which the [taxing authority] could reject because too general or because it does not comply with formal requirements of the statute and regulations, [that] will nevertheless be treated as a claim where formal

in which the property is placed in service by the taxpayer.").

defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period. This is especially the case where such a claim has not misled the [taxing authority] and he has accepted and treated it as such.

*United States v. Kales,* 314 U.S. 186, 194, 62 S.Ct. 214, 86 L.Ed. 132 (1941) (citations omitted). In practice,

> a general notice advising the government that the taxpayer believes his taxes have been erroneously assessed, requesting a refund and indicating that the basis of the refund is in litigation, is sufficient to constitute an "informal" refund claim which may be perfected by the filing of a formal refund claim after the refund claim limitations has expired.

*Bank of Peoria,* 874 F.2d at 1170 (citations and internal block quote format omitted).

■ In order to establish an "informal claim," there must be a "written component" · that "should adequately apprise the [taxing authority] that a refund is sought and for certain years." *American Radiator & Standard Sanitary Corp. v. United States,* 162 Ct.Cl. 106, 318 F.2d 915, 920 (1963) (citations omitted). *See also Bank of Peoria,* 874 F.2d at 1171 ("courts generally agree than an informal refund claim must have a written component" (internal quotation marks and citations omitted)); *Stelco Holding Co. v. United States,* 42 Fed.Cl. 101, 109 (1998) ("The cases agree that the one indispensable element of an informal claim for refund is a 'written component.' " (Citations omitted.)). Beyond this, courts assess whether an informal claim has been made on a case-by-case basis, considering the totality of the circumstances presented:

> There are no "hard and fast rules" for determining the sufficiency of an informal claim, and each case must be decided on its own facts with a view towards determining whether under those facts the [taxing authority] knew, or should have known, that a claim was being made.

*PALA, Inc. Employees Profit Sharing Plan and Trust Agreement v. United States,* 234 F.3d 873, 877 (2000) (footnote and internal quotation marks omitted).

■ The informal claim Cosmo World relies upon is KMV's Form N–20 partnership return of income for 1996, filed on August 27, 1997. It contained a Form N–312 stating that KMV, on its own and by its partnerships KWC and KWWC,[8] had a $30,998,215.00 total cost of eligible property qualifying for the capital goods excise tax credit carrying a potential yield of $1,239,929 in tax credits (4% of $30,998,215.00). The KMV partnership filing also contained a statement identifying its constituent, fifty-fifty partners as Cosmo World and Kajima. Finally, the KMV partnership filing included a Schedule K–1 for Cosmo World stating a $16,040,525.00 share of KMV's total cost of eligible property qualifying for the capital goods excise tax credit.[9]

The putative perfecting claim is, of course, Cosmo World's dilatory December 10, 1998 Form N–30 corporation income tax return for 1996 that contained its Form N–312 capital goods excise tax credit claim.

The basic problem with KMV's August 27, 1997 filing is, quite simply, that nowhere therein did Cosmo World make a claim of any kind. As its name implies, the "informal claim" doctrine presupposes the existence of a claim by the taxpayer:

> It is not enough that the [taxing authority] have in its possession information from which it might deduce that the taxpayer is entitled to, or might desire, a refund; nor is it sufficient that a claim involving the same ground has been filed for another year or by a different taxpayer.

*American Radiator,* 318 F.2d at 920 (citations omitted). *See also Kales,* 314 U.S. at 190–93, 62 S.Ct. 214 (taxpayer had lodged a letter of protest of a deficiency assessment with the taxing authorities which, if successful, would have resulted in a refund); *American Radiator,* 162 Ct.Cl. 106, 318 F.2d 915

---

**8.** Also included in the KMV partnership filing were the corresponding Form N–312A information statements, concerning the capital goods excise tax credit, for KWC and KWWC.

**9.** Also included in the KMV partnership filings was the corresponding Schedule K–1 for Kajima, stating a $14,957,690.00 share of KMV's total cost of eligible property qualifying for the capital goods excise tax credit.

(relevant notations in taxpayer's income tax returns, and revenue agent's knowledge that taxpayer had elected a certain tax treatment and hence believed itself entitled to and expected a certain sum in refunds, sufficient to comprise an informal claim); *Bank of Peoria*, 874 F.2d at 1166–69 (counsel for the taxpayer trusts had written a letter to the taxing authority regarding a settlement of the subject tax dispute that would involve refunds); *Miller v. United States*, 949 F.2d 708, 712 (4th Cir.1991) (fiduciary tax return that showed no tax liability and made no claim for a refund was not an informal claim, even though it took the deduction at issue); *Kidde Industries, Inc. v. United States*, 40 Fed.Cl 42, 62–66 (1997) (informal negotiations between taxpayer and tax auditor over disputed tax credits, along with relevant written information provided by the taxpayer to the auditor during the negotiations, were sufficient to comprise an informal claim); *PALA*, 234 F.3d at 877–79 (taxpayer letter protesting an adverse determination precluding refunds would have been a sufficient informal claim, had it not been withdrawn).

In this case, KMV's Form N–20, containing its Form N–312 and the Schedule K–1 for Cosmo World, certainly showed that Cosmo World might be "entitled to, or might desire," a capital goods excise tax credit. *American Radiator*, 318 F.2d at 920 (citations omitted). But nowhere in that filing, or in any other timely filing or communication, did Cosmo World's apparent entitlement and desire ripen into a claim or request for the credit. This explains the conspicuous absence of any indication that any party responded to KMV's filing vis-à-vis Cosmo World's purported claim.

We acknowledge that, at least with respect to the "written component" element of an informal claim, "the writing should not be given a crabbed or literal reading, ignoring all the surrounding circumstances which give it body and content. The focus is on the claim as a whole, not merely the written component." *Id.* at 920 (citations omitted). But even the most expansive of interpretations cannot supply a desideratum where none exists. And as we have just noted, there are no surrounding circumstances to consider precisely because the claim that would have given rise to them had not been made. It is not enough that the Director is aware of a taxpayer's entitlement to a tax credit. The Director is entitled to know whether the taxpayer is indeed claiming the credit. *See Kales*, 314 U.S. at 194, 62 S.Ct. 214 (an informal claim is a "claim, which the [taxing authority] could reject" (citations omitted)). Taking a step back, we question the wisdom of recognizing an informal claim in the informational tax return of a pass-through, non-taxpaying entity like KMV. To do so would give its constituent, taxpaying partners *carte blanche* to file a perfecting formal claim at any time, the filing deadline notwithstanding.

To summarize: Cosmo World itself made no timely claim for its capital goods excise tax credit. KMV's filing contained no claim by Cosmo World. KMV could not claim the credit on its own behalf. *See* HRS § 235–110.7(a) (in pertinent part, "[i]n the case of a partnership, ... [d]istribution and share of [the capital goods excise tax] credit shall be determined by rules"); HAR § 18–235–110.7–20(d) ("In the case of a taxpayer who is involved in a pass-through entity (i.e., partnership, S corporation, estate, or trust) and who claims a credit for the entity's eligible property, the taxpayer shall attach to Form N–312, a copy of the Schedule K–1 and any other statement (relating to the credit) which is provided by the pass-through entity."). Even assuming that KMV could act as agent in this respect for its constituent partner, Cosmo World, it made no claim in its filing on Cosmo World's behalf (see discussion, *infra*). And it is no answer to reference, as Appellants do, constituent partner Kajima's timely claim. *American Radiator*, 318 F.2d at 920 ("nor is it sufficient [for an informal claim] that a claim involving the same ground has been filed for another year or by a different taxpayer" (citations omitted)). Because there was no predicate claim in this case, there is no occasion for us to consider, much less adopt and apply, the "informal claim" doctrine.

*2. The "Substantial Compliance" Doctrine Does Not Apply To This Case.*

■ Appellants next contend that "[e]ven if the Director is correct that [Cosmo

World's] claim should have been filed prior to the end of 1997, nevertheless, [Cosmos World] should be permitted to recognize its share of [KMV's] Tax Credit because [Cosmo World] substantially complied with the requirements of HRS § 235–110.7 prior to such date." Reply Brief at 7. Appellants argue that "[t]he purpose of H.R.S. § 235–110.7 is to encourage investments of exactly the type made by Appellants. There is absolutely no question that the purpose of the statute has been fulfilled by Appellants' investment." Opening Brief at 21. Appellants continue: "The Director was provided in 1997 with *all* of the information necessary for him to evaluate the validity of the credit being sought, as well as the identity of the ultimate beneficiaries." *Id.* at 24 (emphasis in the original).

In this manner, Cosmo World seeks shelter under the "substantial compliance" doctrine—yet another federal, judge-made tax doctrine, *Prussner v. United States,* 896 F.2d 218, 220 (7th Cir.1990), that Hawai'i has yet to adopt for the purpose of resolving tax disputes. We first question the wisdom of adopting a federal doctrine that is, at best, a moving target and, at worst, unwise. We conclude that even if we were to recognize the "substantial compliance" doctrine, it could afford no protection to Cosmo World in the face of the capital goods excise tax statute. Hence, we need not.

In general, the "substantial compliance" doctrine works to excuse a taxpayer's failure to strictly comply with the statutory and regulatory requirements governing elections of favorable tax treatment. However, its construction, and hence its application, have by no means been uniform. *Prussner,* 896 F.2d at 223–26. There is, in fact, a discernible split between those federal courts that interpret the doctrine in the most liberal terms, *see e.g., American Air Filter Co., Inc. v. Commissioner,* 81 T.C. 709, 719–20, 1983 WL 14887 (1983), by focusing upon "the harm[, or lack thereof,] that lack of full compliance causes the [taxing authority,]" *Prussner,* 896 F.2d at 223, and those federal courts that narrowly construe the doctrine, *see e.g., id.* at 224–35, by limiting its application to "cases in which the taxpayer had a good excuse (though not a legal justification) for

failing to comply with either an unimportant requirement or one unclearly or confusingly stated in the regulations or the statute." *Id.* at 224. Yet another school of federal courts uses a sort of substantive/procedural dichotomy in assessing substantial compliance:

> Regulatory requirements that relate to the substance or essence of the statute must be complied with strictly. However, substantial compliance may be sufficient if the regulatory requirements in dispute are procedural or directory in that they are not of the essence of the thing to be done but are given with a view to the orderly and prompt conduct of business, and if the omission of the required material has not operated to respondent's prejudice.

*Tipps v. Commissioner of Internal Revenue,* 74 T.C. 458, 468, 1980 WL 4600 (1980) (citations omitted). And none of the theoretical distinctions outlined are by any means clearly distinct. *Prussner,* 896 F.2d at 223–24.

This theoretical morass has not escaped the attention of critics of the substantial compliance doctrine. *See, e.g., id.* at 223–26 ("Reading the Tax Court's decisions on the subject of substantial compliance is enough to make one's head swim."). And standing nonplussed at the crossroads of the disparate federal approaches to the doctrine gives us pause to consider the limits of judicial authority:

> There is no general judicial power to relieve from deadlines fixed by legislatures or, as here, by agencies exercising legislative-type powers. To extend the time for filing an amended return beyond the limits prescribed in the Act is a legislative not a judicial function.

*Id.* at 223 (internal quotation marks, citations and brackets omitted). This consideration is particularly acute in our case, in which the legislature has chosen not only to set an explicit deadline for filing claims for the capital goods excise tax credit, but to expressly provide that a taxpayer missing the deadline waives all right to claim the credit. HRS § 235–110.7(b) (in pertinent part, "[a]ll claims for tax credits under this section, including any amended claims, must be filed on or before the end of the twelfth month following the close of the taxable year for which the credits may be claimed. Failure to com-

ply with the foregoing provision shall constitute a waiver of the right to claim the credit."). *Cf.* HAR § 18–235–110.7–20(a) ("A claim for the credit, including an amended claim, must be filed on or before the end of the twelfth month following the close of the taxable year for which the credit may be claimed, or if an extension of time for filing a return has been granted, within the extension period.").

Hence, regardless of whether KMV, through its investments and those of KWC and KWWC, fulfilled the putative general purposes of the legislature in enacting the capital goods excise tax credit, and regardless of whether the tax returns of the Appellants provided all information necessary to show Cosmo World's entitlement to the credit, we decline to recognize an indistinct federal doctrine that sets at naught legislative intent; especially where, as here, our legislature has spoken with laser clarity and precision. While a case and a statute may yet come wherein the "substantial compliance" doctrine is more compelling, this is not that case.

We observe, in any event, that Cosmo World simply did not comply, substantially or otherwise, with the statutory requirement that an earned capital goods excise tax credit must be timely claimed. As the Director correctly argues:

> This is not a case where the Taxpayer timely filed an incomplete claim for the Tax Credit or failed to include essential information on its timely filed claim. Instead, Taxpayer never filed a timely claim for the Tax Credit[.]

Answering Brief at 19.

*3. Cosmo World's Claim Cannot Be Saved Under Principles of Agency, Contract Or Constitutional Due Process.*

Appellants' last three contentions, briefly argued on appeal are (1) that Cosmo World made a timely claim for the capital goods excise tax credit through its agents, KMV, Kajima and Cosmo Parent; (2) that the State will be unjustly enriched if it does not honor its "contract" with Cosmo World; and (3) that by denying Cosmo World its tax credit, the Director deprived it of constitutional due process.

Briefly, we conclude that, regardless of whether KMV, Kajima and Cosmo Parent can be considered agents of Cosmo World with actual or apparent authority to file its capital goods excise tax credit on its behalf, we discern in the record no timely claim by anyone or anything made on Cosmo World's behalf. We also conclude that, assuming the unprecedented notion that the State makes an offer when it enacts a tax credit statute that can be accepted by a taxpayer to create an enforceable contract, here Cosmo World failed to fulfill an express condition precedent in the State's offer—a timely claim. And we conclude, finally, that absent the derogation of a contractual property right, we can discern no basis for Cosmo World's constitutional due process claim.

## V. Conclusion.

Accordingly, we affirm the July 25, 2000 judgment of the tax appeal court, along with its underlying December 30, 1999 order granting the Director's motion for summary judgment and denying Appellants' motion for summary judgment.