122 P.3d 809

In the Matter of the Tax Appeal of Kenneth & Sophia ALFORD, Survivor's Trust, Jerald V. Dunlap, Severn Starzynski, Nobuyuki Ishima, Mcproud Family Trust, Hhbw Family Ltd. Partnership, Richard C. & Joan Elliott, Bradley W. Brixon Revocable Trust, Ted & Karen L. Simon, Thomas Khoy Fong Wong, Wesley N. & Janice M. Callahan, Jeffery J. & Elisa V. Rummel, Adloph & Erica Laepple, Wayland S. Dudley, Grace Kae, Carol A. Laechelt, Hugh C. & Barbara J. Pape, Russell Anderson, David J. & Carol L. Novick, Ernest W. & Pamela Tuttle, John H. Coleman, Walter S. & Terry A. Leong, Harold L. Preeman, William Kowalski, Henri P. & Ryoko Kostermans, Richard A. Moody, Gertrud Eberwein, Bruce F. Connell, Ernesto V. Castro, et al., Pearl R. Groves, Glenn H. Meyer, Leo A. & Jeannette M. Young,

Glenn R. & Cynthia R. Oakes, Peter & Terry T. Chan, Alfonso J. & Fujiko Baeza, Alma V. Brosio, Trustee, Karen K. Schumann, American Trust Co. of Hawaii, Harriette W. Rhodes, Joseph Michael Mankvitz, James W. Witt, Willis Edgar III & Lena Chung Howard, Black Pearl Ventures, Inc., Betty June Caulo, Frank M. Nowdesha, Marsha E. Lewis, Bernard J. Gainey, Frank J. Hata, Young Family Trust, Kendrick Wong, Russell & Maxine Anderson, Yang Ja Wang, Denise Bailey Evans, Lewis G. Waldo, James J. Sullivan, Leland M. Garrison, Sang Tea Bobay, Henri Petrus & Ryoko Kostermans, Patricia Rudy, Herbert Y.K. Wong, Paul N. Best, et al., Louis W. & Alicia Y. Crompton, Donald S. Robertson, Roy D. & Marilyn A. Gustafson, Carl Olson, Dorothy G. Howard, Edward Randolph Brooks & Arlene Sayeko Kishi, H. Harry Mueggenburg, Velma Jean Brixon, James H. & Dora M. Kamo, Augustus Tagliaferri, Jack M. & Marie A. Feliz, Yolo Trust, Judy L. Moore, Paul R. & Helen C. Olson, William C. Warren, George K. & Sharon D. Igi, Mary P. Berg, Bruce Holliday, Albert W. & Beverly A. Fink, Peter & Myung Choi, Salisbury Restaurant Enterprise, James R. II & Sandra R. Johnston, Mecham Family Limited Partnership, Matthew H. & Mary F. Witteman, Daniel W. & Sandra R. Moorman, Richard & Kristine Bosselmann, Ronald J. Smerling, Frank & Virginia Rees, Anne–Marie Volk, Franklin M. Tokioka, Barry D. Berquist, William R. Kowalski, Jeanette M. Young, Ernesto V. & Nila M. Castro, Gainey Trust, Willis E. III & Lena C. Howard, Joseph M. & Dorothy M. Mankvitz, Neale Family Trust, John & Nancy Coleman, Trustees Jack H. Coleman Lifetime Trust, AMNW Trust A, University Of North Dakota Foundation, Earl Strinden Trustee, Pape Revocable Trust, Adolph & Traude (Erica) Laepple, Margaret Berquist, Matthew & Mary Witteman Trust, Leland M. Garrison Trust, Helfand Trust, Peter C. & Myung Choi, Harold & Bette L. Preeman, Holliday Associates, Inc., Karen

Taggart, George K. & Sharon D. Igi, Judy L. Moore & Patricia Hanson, Richard K. Rudy, James & Margaret K. Sullivan, Denise B. Evans, White Sand Ventures, Inc., Atilla (Ted) & Karen L. Simon, Bradley Brixon, Trustee, Dorothy Miller, Severn & Gloria M. Starzynski, Catherine Guiring, Trustee, Appellants–Appellants

v.

**CITY AND COUNTY OF HONOLULU,**
Appellee–Appellee.

No. 25275.

Supreme Court of Hawaiʻi.

Nov. 10, 2005.

Reconsideration Denied Nov. 25, 2005.

Roger S. Moseley (Case Bigelow & Lombardi), Honolulu, on the briefs, for appellants-appellants.

Susan A. Bender, Deputy Corporation Counsel, City & County of Honolulu, on the briefs, for appellee-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold that (1) the separate judgment provision of Hawai'i Rules of Civil Procedure (HRCP) Rule 58 does not apply to tax appeal cases, (2) pursuant to Rules 3.4(a) and 6.1 of the Rules of the Boards of Review of the City and County of Honolulu, Appellants-Appellants Kenneth and Sophia Alford, et. al. (collectively Taxpayers) provided sufficient proof that authorization to sue on behalf of eighty fee unit owners accompanied the "Taxpayer's Notice of Real Property Tax Appeal," (Taxpayers' Appeal Notice) and (3) Taxpayers have not established that the tax appeal court [1] (the court) erred (a) in directing that Appellee–Appellee City and County of Honolulu (the City) promulgate a rule pursuant to Hawai'i Revised Statutes (HRS) chapter 91 regarding classification criteria and reassessment of the 114 subject properties for tax years 2000 and 2001, 34 of which were "Leasehold Units" and 80 of which were "Fee Units," (b) in not restoring the classification of the disputed units to an "Apartment" designation, or (c) in impliedly denying a refund of monies collected pending reassessment. Therefore, the July 23, 2002 order granting in part and denying in part Taxpayers' motion for summary judgment (order) issued by the court is affirmed.

## I.

This matter involves the real property tax classifications by the City of condominium units located in the Waikiki Shoreline Apartments (Waikiki Shoreline) for the 2000 and 2001 tax years.[2] Taxpayers are apartment owners of units in the Waikiki Shoreline. The Waikiki Shoreline is a fifteen-floor, mixed-use, multi-family dwelling structure located on Waikīkī Beach. Presently, the top fourteen floors are residential apartments and the bottom floor is commercial space.

Prior to 1982, the State of Hawai'i exercised the real property taxing function, and both apartments and hotels were combined into the same category of "hotel and apartment." HRS § 246–10(d)(e)(1) (1993) (superceded by Revised Ordinances of Honolulu (ROH) § 8–7.1(c)(1)(C) and (D) (2005)). In 1982, the real property taxing function was transferred to the counties and separate classifications were created, including one identified as "Apartment" and another identified as "Hotel and resort." ROH § 8–7.1(c)(1)(C) and (D). For the 1982 and 1983 tax years, the Waikiki Shoreline was classified as "Hotel and resort" in line with these new categories.

In 1984, the "Hotel and resort" classification was challenged in an appeal to the board of review of the City and County of Honolulu (the board of review). In 1985, the parties reached a settlement agreement whereby the classification for the Waikiki Shoreline was changed to "Apartment."

In 1993, the Waikiki Shoreline was again classified as "Hotel and resort." A second tax appeal was filed. Because of the settlement agreement reached in 1985, the classification was changed back to "Apartment."

In December 1994, the Waikiki Shoreline was converted to a condominium. After this conversion, the City was required, pursuant to ROH 8–7.1(c)(3)(A) and (B) (1996),[3] to separately assess and classify each condo-

---

1. The Honorable Gary W.B. Chang presided over this matter.

2. One hundred fourteen appeals were filed for the 2000 tax year and 117 appeals were filed for the 2001 tax year.

3. ROH § 8–7.1(c)(3)(A) and (B) provide, in relevant part:

When property is subdivided into condominium units, each unit and its appertaining common interest:
   (A) Shall be classified upon consideration of the unit's actual use into one of the general classes in the same manner as land; and
   (B) Shall be deemed a parcel and assessed separately from other units.

minium unit in the Waikiki Shoreline based upon the unit's actual use.

In 1999, the City conducted an investigation of the actual use of the units in the Waikiki Shoreline and determined that there were three rental pools operating in the Waikiki Shoreline involving (1) Outrigger Hotel and Resorts, (2) Aston Hotel and Resorts, and (3) Captain Cook and Associates. The operators of these rental pools provided the City with a list of the units in their rental pools. On this basis, the units were classified as "Hotel and resort" for the tax year 2000.

Sometime in December 1999, owners of the classified units received assessment notices of the reclassification to "Hotel and resort." On or about January 18, 2000, Taxpayers appealed this classification as related to 114 units to the board of review. Of these 114 units, 34 were "Leasehold Units" and 80 were "Fee Units." [4]

In each of these 114 appeals,[5] the Taxpayers' appeal notice was signed by an attorney. The attorney represented the Board of Directors of the Waikiki Shoreline condominium association. Two documents were appended to the notice. The first, entitled "Authorization" signed by a Richard Elliot, president of Waikiki Shoreline, Inc., stated in relevant part that

> [b]y authority of the Board of Directors of Waikiki Shore[line], Inc.:
>
> (1) *The law firm of Case Bigelow & Lombardi ... [is] hereby authorized to file appeals of the real property tax assessments of all Apartment units in the Waikiki Shore[line] condominium, which have been classified from "Apartment" to "Hotel and Resort",* and in which Waikiki Shore[line], Inc. has an ownership interest as the fee owner/lessor, or fee simple ownership.
>
> (2) The lessees of all Apartments in the Waikiki Shore[line] condominium ... generally noted on the assessment notices as the "taxpayer", are hereby authorized to file appeals of the real property tax assessments of all such Apartment units in the Waikiki Shore[line] condominium, which have been classified from "Apartment" to "Hotel and Resort".

(Emphasis added.) The second attachment entitled "Consent to Action Without a Meeting" (consent) was signed by officers [6] of the Board of Directors of the Waikiki Shoreline condominium association. The consent stated, in pertinent part, that:

> Pursuant to Article III Section 16 of the Bylaws of the Association of Apartment Owners [(AOAO)] of Waikiki Shore[line], the undersigned, being all of the members of the Board of Directors, find and direct as follows:
>
> . . . .
>
> 6. To address the serious problem posed by the improper assessments, the *President of the [AOAO], Richard Elliot, is authorized and directed, pursuant to [ (HRS) § ] 514A-93, to file appeals of the assessment of each and every Apartment*

4. In its answering brief, counsel for the City declared that 34 of the 114 units were "held in leasehold as of January 18, 2000" with "Waikiki Shore, Inc., the leased fee owner, ha[ving] an ownership interest" in these 34 units. The City identified these 34 units as "Leasehold Units", distinguishable from 80 units that are identified as "Fee Units." Counsel for the City declared that the 80 units "were owned in fee simple as of January 18, 2000" with "Waikiki Shore, Inc. ha[ving] no ownership interest" in these units. In its reply brief, Taxpayers do not dispute this distinction between "Leasehold Units" and "Fee Units."

5. On November 20, 2000, Robert O. Magota, a real property assessor, filed a "Certificate of Appeal" with the court that certifies the appeal as to real property located at Tax Map Key 2–6–004–012–0045. Four documents were appended

to this certificate and include (1) the Taxpayers' appeal notice, (2) an "Authorization," (3) a "Consent to Action Without a Meeting," and (4) a "Decision" by the board of review as to all the disputed units. Based on these attachments, it appears that the notice, authorization, and consent as to the property at Tax Map Key 2–6–004–012–0045 is provided as an example of the documents that were filed as to each unit and owner appealing the 2000 tax assessment to the board of review.

6. The officers of the Board of Directors of the Waikiki Shoreline condominium association who signed the consent were President Richard Elliot, Vice President June H. Kukolsky, Secretary Louis Crompton, Treasurer David J. Novick, Director William J. Dornbush, and Director Thomas M. Hull.

*affected, and authorized to retain counsel, specifically the firm of Case Bigelow & Lombardi ... to represent the owners of the individual Apartments affected on those appeals.... Further, Mr. Elliot shall have the complete authority to direct the appeals and to enter into any settlement, or approve any other resolution of the matters addressed herein.... Any Apartment owner so desiring may, at any time, upon written notice to the Board of Directors, take control of any appeal filed on behalf of that owner, including, but not limited to, dismissal or compromise of the matters addressed in the appeal.* Any such Apartment owner shall not continue to use counsel retained by the President and shall not look to the [AOAO] for payment of their individual legal or other fees and costs subsequent to taking control of the appeal.

(Emphasis added.)

On September 1, 2000, the board of review upheld the classification of "Hotel and resort." The board of review's decision identified the disputed units by, *inter alia*, individual tax map key numbers and board of review case appeal numbers. On September 28, 2000, Taxpayers appealed the board of review's decision to the court.

In December 2000, most of the Taxpayers again received assessment notices that their units were classified as "Hotel and resort." This second group of classifications was appealed directly to the court. Both appeals were consolidated into one tax appeal action.

## II.

On March 8, 2002, Taxpayers moved for summary judgment. They argued that the City reclassified the Waikiki Shoreline units from "Apartment" to "Hotel and resort" by using classification criteria not set forth in an agency rule, thereby violating the rulemaking requirement of HRS chapter 91, the Ha-

waii Administrative Procedure Act (HAPA). Taxpayers sought a judgment vacating the classification of "Hotel and resort," restoring the classification to "Apartment," and refunding all excess taxes collected under the "Hotel and resort" classification. On March 22, 2002, the City filed its memorandum in opposition.

On April 1, 2002, the court conducted a hearing on Taxpayers' motion for summary judgment. The court observed "that although ROH defines 'hotel,' the ordinance does not have a definition for 'apartment.' " It concluded that a criteria used for "Hotels and resort" should "have been adopted as a HRS Chapter 91 rule." The court declined to order that the classification be changed to "Apartment," observing that "the criteria for that classification [was] nebulous as well."

On July 23, 2002, the court issued its order (1) vacating the assessments in the 2000 and 2001 tax appeal cases, and (2) directing the City (a) to promulgate a rule regarding the classification criteria used for the Waikiki Shoreline units and (b) to reassess the disputed units for tax years 2000 and 2001 in accordance with the rule.[7] On August 19, 2002, Taxpayers filed a notice of appeal from the order.

## III.

Taxpayers contend that (1) "the City cannot promulgate a rule ... regarding its classification criteria which will have retroactive effect and allow the City to assess the apartments in question on the basis of that rule for tax years 2000 and 2001," (2) "the tax appeal court should have restored the classification of the disputed units to their preexisting ['Apartment'] classification," and (3) "the tax appeal court should have ordered the refund of money collected on the basis of the improper assessments and should not have permitted the City to keep [the] funds collected[.]"

---

7.  The court's order read as follows:
    IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Appellants' Motion is GRANTED in part and DENIED in part as follows:
    1.  The Motion is granted in that the assessments for tax years 2000 and 2001 are vacated

as to the Appellants only. Further, the City shall promulgate a rule pursuant to Chapter 91, Hawaii Revised Statutes, regarding its classification criteria and shall reassess the subject properties only for tax years 2000 and 2001.
    2.  The motion is denied as to all remaining relief requested.

In response, the City argues that (1) this court lacks jurisdiction to consider this appeal because final judgment was not filed pursuant to HRCP Rule 58, (2) this court lacks jurisdiction over certain 2000 tax year appeals because "proper authorization was not obtained from the owners of the . . . units at the time the Board appeals were filed," (3) the court "was correct in . . . concluding [as a remedy] that the City . . . promulgate a rule pursuant to HRS chapter 91 regarding condominium classification criteria to apply . . . for tax years 2000 and 2001," under *Hawaii Prince Hotel Waikiki Corp. v. City & County of Honolulu,* 89 Hawai'i 381, 974 P.2d 21 (1999), (4) the court "was correct in not reclassifying the subject units to 'Apartment,' " and (5) the court "was correct in not ordering the City to refund the monies collected . . . pending reassessment."

Taxpayers contend in their reply brief that *Hawaii Prince* should be overruled or, in the alternative, should be distinguished from the instant case and that the form of notice issued by the City did not comply with the notice requirements of [ROH § 8–2.1(c) ].

Taxpayers request that this court (1) reverse that portion of the court's decision which directs the City to promulgate a rule regarding its classification criteria and directs the retroactive application of that rule to the Waikiki Shoreline units for the 2000 and 2001 tax years, (2) require the classification of the disputed units be reverted to "Apartment," and (3) order the refund of all taxes in excess of those which would have been collected if the real property had been classified as "Apartment," plus interest and earnings on such excess, where applicable.

### IV.

"Unlike other appellate matters, in reviewing summary judgment decisions an appellate court steps into the shoes of the trial court and applies the same legal standard as the trial court applied." *Beamer v. Nishiki,* 66 Haw. 572, 577, 670 P.2d 1264, 1270 (1983) (quoting *Fernandes v. Tenbruggencate,* 65 Haw. 226, 228, 649 P.2d 1144, 1147 (1982)).

It is well settled that, in reviewing the decision and findings of the Tax Appeal Court, a presumption arises favoring its actions which should not be overturned without good and sufficient reason. The appellant has the burden of showing that the decision of the Tax Appeal Court was "clearly erroneous."

*In re Tax Appeal of Maile Sky Court Co., Ltd.,* 85 Hawai'i 36, 39, 936 P.2d 672, 675 (1997) (quoting *City and County of Honolulu v. Steiner,* 73 Haw. 449, 453, 834 P.2d 1302, 1306 (1992) (citation omitted)). A finding of fact is clearly erroneous when it is not supported by substantial evidence or "an appellate court is left with 'a definite and firm conviction that a mistake has been made.' " *Id.* (quoting *In re Tax Appeal of Frank W. Swann,* 7 Haw.App. 390, 399, 776 P.2d 395, 401 (1989)).

Conversely, questions of law are reviewable under the right/wrong standard. *In re Maile Sky Court,* 85 Hawai'i at 39, 936 P.2d at 675 (citing *In re Tax Appeal of Fuji Photo Film Hawaii, Inc.,* 79 Hawai'i 503, 508, 904 P.2d 517, 522 (1995)).

*Hawaii Prince,* 89 Hawai'i at 388, 974 P.2d at 28 (brackets omitted).

### V.

In connection with its first argument, the City contends that the separate judgment provision of HRCP Rule 58, applicable to circuit court civil cases, applies to tax appeal cases.

### A.

In response, Taxpayers maintain that the July 23, 2002 order is the order that finally decided the underlying tax appeal cases and that it constitutes the "decision of the tax appeal court" that is appealable under HRS § 232–19 (1993). We believe Taxpayers are correct.

HRCP Rule 58 applies to civil actions "in the circuit courts of the State." HRCP Rule 58 requires that "[e]very judgment shall be set forth on a separate document." Accordingly, an order disposing of a circuit court case is appealable when the order is reduced to a separate judgment. *Jenkins v. Cades Schutte Fleming & Wright,* 76 Hawai'i

115, 119, 869 P.2d 1334, 1338 (1994). HRCP Rule 1 states that the HRCP "govern the procedure in the circuit courts of the State in all suits of civil nature whether cognizable as cases at law or in equity, with the exceptions stated in Rule 81." The "circuit courts of the State" are those courts established by HRS § 603-2 (1993). That statute provides that

> [t]here shall be established in each of the [four] judicial circuits of the State a court with the powers and under the conditions hereinafter set forth, which shall be styled the circuit court of such circuit, as for instance, the circuit court of the third circuit.

The tax appeal court is not a circuit court established by HRS § 603-2. Rather, pursuant to HRS § 232-11 (1993),[8] the court is a court of record having statewide jurisdiction to hear and determine, without a jury, appeals from tax assessments or from decisions on such assessments made by the state boards of review. The appeals are heard by a circuit judge of the first circuit by assignment of the first circuit court administrative judge. HRS § 232-8 (1993). The tax appeal judge has "all the powers and authority of a circuit court" in carrying out the duties and functions of the court. HRS § 232-12 (1993). Hearings before the court are hearings *de novo* to determine all questions of fact and law, including constitutional questions, involved in the appeal. HRS § 232-13 (1993).

The decision rendered by the court is appealable to this court under HRS § 232-19. This provision states, in relevant part, that

> [a]ny taxpayer or county aggrieved or the assessor may appeal to the supreme court from *the decision of the tax appeal court* by filing a written notice of appeal with the tax appeal court and depositing therewith the costs of appeal *within thirty days after the filing of the decision.* The appeal shall be considered and treated for all purposes

as a general appeal and shall bring up for determination all questions of fact and all questions of law, including constitutional questions, involved in the appeal.

(Emphases added.) *See also* Tax Appeal Court Rule 2 (2002) ("An appeal to the Supreme Court and the Intermediate Court of Appeals from any decision of the Tax Appeal Court in these actions must be filed within thirty days after the filing of such decision."). Hence, the court is, by virtue of HRS § 232-11, separate and distinct from the circuit court, although presided over by a circuit court judge. *Cf. In re Campbell,* 34 Haw. 10, 11, 1936 WL 4423 (1936) (stating that the land court established under then-HRS § 5000 is a tribunal separate and distinct from the circuit court even though a circuit judge sits by designation as a judge of the land court).

Second, HRCP Rule 81(b) states that the "[Rules of Civil Procedure] shall apply to the following proceedings *except insofar as and to the extent that they are inconsistent with specific statutes* of the State or rules of court relating to such proceedings: ... (8) Actions for the collection of taxes[.]" (Emphasis added.) In contrast to HRCP Rule 58, the Tax Appeal Court Rules contain no provision requiring the court to enter a "judgment" in a tax appeal. Rather, Tax Appeal Court Rule 29 (2002) provides, in pertinent part, that "[i]n *procedural matters not specifically provided for by the [tax appeal court] rules,* the *[tax appeal] court will be guided, to the extent applicable, by* the Rules of the Circuit Courts of the State of Hawai'i [ (RCCH) ], and *the [HRCP]."* (Emphases added.) Thus, Tax Appeal Court Rule 29 does not require the court to apply a separate judgment rule in a tax appeal case. On the other hand, HRS § 232-19 specifically authorizes an appeal "from the decision of the tax appeal court."

The purpose of the separate judgment provision of HRCP Rule 58 is to implement the

---

8. HRS § 232-11, entitled "Court of record; general duties, powers, seal" states, in relevant part, that

> [t]he tax appeal court shall hear and determine appeals as provided in [HRS] section 232-16 or 232-17. It shall be a court of record; have jurisdiction throughout the State with respect

to matters within its jurisdiction; and shall have the power and authority in the manner provided in [HRS] section 232-13, to decide all questions of fact and all questions of law, including constitutional questions, involved in any such matters, without the intervention of a jury.

finality rule of HRS § 641–1(a) (1993), which authorizes appeals from "final judgments, orders, or decrees" in circuit court civil cases. *Jenkins,* 76 Hawai'i at 118, 869 P.2d at 1337 ("We are mindful, however, that we may hear appeals from only final judgments, orders, or decrees except as otherwise provided by law. HRS § 641–1(a)."). "The separate judgment rule [of HRCP Rule 58] is designed to simplify and make certain the matter of appealability" and "[i]ts sole purpose is to determine when the time for appeal commences." *Id.*

By contrast, in tax appeal cases, an appeal to this court is taken from "the decision of the tax appeal court." HRS § 232–19. "Decision" is not defined by the statutes or rules governing tax appeals. However, consistent with the general rule of finality governing appeals, the appealable "decision of the tax appeal court," HRS § 232–19, should be the decision that finally decides all issues in the tax appeal.

## B.

We concur with the reasoning of the Intermediate Court of Appeals (ICA) in *Lewis v. Kawafuchi,* 108 Hawai'i 69, 116 P.3d 711 (2005). In *Lewis,* the taxpayer appealed from an "Order Granting in Part and Denying in Part Director of Taxation, State of Hawaii's Motion to Dismiss and for Rule 11 Sanctions Filed on October 6, 2003" and the "Order Denying Taxpayer/Appellant Donald A. Lewis' Supplemental Motion and Memo filed on November 14, 2003." *Id.* at 70, 116 P.3d at 712. The taxpayer opined that he was conducting business within the sovereign territory of the Kingdom of Hawaii and thus was not earning income within the boundaries of the State of Hawaii. *Id.*

The Department of Taxation assessed the taxpayer income tax, penalty, and interest for the 1996 tax year. *Id.* at 71, 116 P.3d at 713. The taxpayer challenged the assessment before the board of review, maintaining that he had not earned income within the State of Hawai'i and arguing that O'ahu was not within the boundaries of the State. *Id.* The board of review rejected the taxpayer's claims and he appealed to the court. *Id.* The

Director of Taxation moved to dismiss the taxpayer's appeal and for HRCP Rule 11 sanctions. *Id.* The court dismissed the taxpayer's appeal but denied the request for sanctions. *Id.* at 72, 116 P.3d at 714. Separate judgments were not filed after the aforementioned orders. *Id.*

The ICA conducted an analysis of HRCP Rule 58, *Jenkins,* HRS § 232–11, and HRS § 232–19 substantially similar to ours. *Id.* at 72–73, 116 P.3d at 714–15. Insofar as the analysis of the ICA corresponds to ours, we agree with its reasoning. As the ICA stated, "[u]nder the plain language of the statutes and rules governing [Tax Appeal Court (TAC)] appeals then, no separate judgment is required and appeals must be noted within 30 days of a TAC decision." *Id.* at 73, 116 P.3d at 715. The ICA then held that a separate judgment was not required as a prerequisite to an appeal and jurisdiction was proper. *Id.* at 74, 116 P.3d at 716.

The City cites to *Rhoads v. Okamura,* 98 Hawai'i 407, 49 P.3d 373 (2002), for the proposition that a final judgment be entered before an appeal from the court may be heard by this court. In that case, this court analyzed RCCH Rule 23 with reference to the separate judgment provision in HRCP Rule 58. In *Rhoads,* the taxpayer appealed to the court from an assessment of state income taxes. *Id.* at 409, 49 P.3d at 375. The court decided the appeal by summary judgment and entered: (1) a June 21, 2001 order granting summary judgment in favor of the tax director that affirmed the income tax assessment against the taxpayer, and (2) an August 8, 2001 judgment on the June 21, 2001 order that entered judgment in favor of the tax director and against the taxpayer. *Id.*

The taxpayer appealed the judgment to this court and argued, *inter alia,* that the August 8, 2001 judgment was invalid because it was submitted by the tax director to the court more than ten days after entry of the June 21, 2001 summary judgment order, in violation of RCCH Rule 23.[9] *Id.* at 410, 49 P.3d at 376. This court rejected the taxpay-

---

9. RCCH Rule 23 requires a prevailing party to submit a proposed judgment to the circuit judge for settlement within ten days after a decision awarding judgment.

er's argument by adopting the tax director's position that:

> RCCH Rule 23 is a procedural provision regarding the separate document requirement of HRCP Rule 58 ("Every judgment shall be set forth on a separate document.") and it appears to relate solely to the expedition of the court's business. "The separate document provision was copied from a similar provision of the Federal Rules of Civil Procedure. Its sole purpose is to determine when the time for appeal commences." *Jenkins v. Cades Schutte Fleming & Wright*, 76 Hawai'i 115, 118, 869 P.2d 1334, 1337 (1994) ... A late submission of a proposed judgment by a party would not contravene the purpose behind the separate document requirement because the time for appeal would not commence until the judgment is entered.

*Id.* at 410–11, 49 P.3d at 376–77 (emphasis omitted). Although *Rhoads* made reference to the separate document rule, it was concerned with the requirement that a proposed judgment be submitted to the trial court within ten days of an order granting summary judgment. The *Rhoads* court did not mention HRS § 232–19. Hence, *Rhoads* is not dispositive.

Similarly, in *In re Cosmo World of Hawaii, Inc.*, 97 Hawai'i 270, 271, 36 P.3d 814, 815 (App.2001), taxpayers appealed from an order granting summary judgment to the State Director of Taxation. This court dismissed Cosmo World's first appeal "for lack of appellate jurisdiction." *Id.* at 275, 36 P.3d at 819. After dismissal, "the tax appeal court entered a final judgment" from which a timely appeal was filed and the ICA adjudicated the case on its merits. *Id. Cosmo World*, however, is not dispositive inasmuch as, again, this court did not consider HRS § 232–19 when it dismissed the appeal from the court because an order granting summary judgment had not been reduced to a separate judgment, as required by [HRCP] Rule 58. *Id.*

**C.**

Applying HRS § 232–19 and given that the purpose of the separate judgment is to "make certain the matter of appealability," *Jenkins*, 76 Hawai'i at 119, 869 P.2d at 1338, where the decision of the court finally deciding a tax appeal is clearly ascertainable, the matter of appealability is not uncertain, and, thus, entry of a separate judgment on the decision to "make certain the matter of appealability" would not serve the purpose of the separate judgment rule. To the extent *Rhoads* and *Cosmo World* conflict with this proposition, they are overruled. In the instant case, there was no uncertainty that the July 23, 2002 order vacating the challenged tax assessments and directing the City to take remedial action constituted "the decision of the tax appeal court" that finally decided the subject tax appeal cases. Consequently, the July 23, 2002 order was appealable to this court by notice of appeal filed within thirty days after the order was filed and the August 19, 2002 notice of appeal is a timely appeal of the July 23, 2002 order.

**VI.**

As to the second issue of jurisdiction raised by the City,[10] we conclude that proper authorization for their attorneys to file appeals with the review board was tendered by the Taxpayers.

**A.**

The City maintains that the appeals of the 80 fee units for the 2000 tax year must be dismissed because the authorizations attached to these appeals were signed by the Board of Directors of the AOAO, and not by the taxpayer, owner, or a person under contractual obligation to pay the assessed tax as required by ROH §§ 8–12.1 (1998)[11] and 8–

---

10. The parties appear not to have raised this issue in the court.

11. ROH § 8–12.1 provides, in relevant part that any *taxpayer or owner* who may deem himself or herself aggrieved by an assessment made by

the director ... *may appeal from the assessment* ... to the board of review or the tax appeal court pursuant to HRS Section 232–16 on or before January 15th preceding the tax year, as provided in this article.
(Emphases added.)

12.2 (1998) [12] and Rules 6.1 (1998) [13] and 6.3 (1998) [14] of the Rules of the Boards of Review of the City and County of Honolulu. Thus, according to the City, the Board of Directors "does not have standing to authorize a representative to bring appeals on behalf of the owners of [f]ee [u]nits." The City "acknowledges that HRS [§ ] 514A–93 [(1993) [15]] provides that actions may be brought by a board of directors with respect to any cause of action relating to more than one apartment."

However, the City rejects this statutory directive on the ground that "county law prevails ... over conflicting state law" inasmuch as "the language [of HRS § 514A–93] is limited by the constitutional grant of real property taxing authority to the various counties" pursuant to article VIII, section 3 of the Hawai'i Constitution,[16] *Weinberg v. City & County of Honolulu*, 82 Hawai'i 317, 922 P.2d 371 (1996); *Gardens at West Maui Vacation Club v. County of Maui*, 90 Hawai'i 334, 978 P.2d 772 (1999); and *State ex rel Anzai v. City & County of Honolulu*, 99 Hawai'i 508, 57 P.3d 433 (2002). The City maintains that pursuant to ROH §§ 8–12.1 and 8–12.2 and Rules 6.1 and 6.3 of the Rules of the Boards of Review of the City and County of Honolulu, "only a taxpayer has standing to bring an appeal and ... duly authorize a representative."

12. ROH § 8–12.2 provides, in relevant part that [w]henever *any person is under a contractual obligation to pay a tax assessed against another,* the person shall have the same rights of appeal to the board of review and the tax appeal court and the Supreme Court, in such person's own name, as if the tax were assessed against such person. The person against whom the tax is assessed shall also have a right to appear and be heard on any such application or appeal. (Emphasis added.)

13. Rule 6.1 states:
The notice of appeal shall (a) identify the assessment involved in the appeal, (b) state the grounds of objection to the assessment, and (c) *be signed by the taxpayer or his duly authorized representative.* Proof of authorization to represent taxpayer must be submitted with the appeal. (Emphasis added.)

14. Rule 6.3 states that "[f]ailure to comply with the provisions of 6.1. and 6.2. of this Rule shall be grounds for dismissal of the appeal."

In response, Taxpayers argue that (1) "[t]here is no rule or other authority" that (a) "prescribes any particular form of 'proof of authorization' or execution by any particular person," (b) states "that the authorization granted under the condominium statute or under the condominium by-laws is somehow inadequate," or (c) indicates "that counsel's mere assertion of representation of ... [T]axpayer[s] is not sufficient," and (2) "[t]he City [cannot] impose additional requirements for the 'authorization' in the complete absence of the prior proper promulgation of a rule" under HRS chapter 91.

### B.

The Taxpayers' appeal notice, which was submitted to the board of review by the Taxpayers, was signed by Roger S. Moseley, Esq. of the law firm Case, Bigelow & Lombardi. This form may be filed by the "Owner," "Taxpayer," or "Other." With respect to "Other," the form states that "[w]ritten authorization to represent taxpayer *must* accompany this appeal." (Emphasis in original.) As previously mentioned, Taxpayers attached to this form as proof under Rule 6.1, a document entitled "Consent to Action Without a Meeting" (consent form) indicating that "the President of the [AOAO], Richard Elliot, is authorized and directed, pursuant to [HRS] Section 514A–93, to file appeals ... to

15. HRS § 514A–93 provides, in pertinent part, that

[w]ithout limiting the rights of any apartment owner, *actions may be brought by the* manager or *board of directors,* in either case *in the discretion of the board of directors on behalf of two or more of the apartment owners,* as their respective interests may appear, *with respect to any cause of action relating to ... more than one apartment.*
(Emphases added.)

16. Article VIII, Section 3 states:

The taxing power shall be reserved to the State, except so much thereof as may be delegated by the legislature to the political subdivisions, and except that all functions, powers and duties relating to the taxation of real property shall be exercised exclusively by the counties, with the exception of the county of Kalawao. The legislature shall have the power to apportion state revenues among the several political subdivisions.

retain counsel, specifically the firm of Case Bigelow & Lombardi ... to represent the owners of the individual Apartments affected ... [with] the complete authority to direct the appeals." The consent form, purported to be written pursuant to Article III Section 16 of the Bylaws of the AOAO of Waikiki Shoreline, specifically addressed "the serious problem posed by the improper assessments" for the tax year 2000–2001. Any apartment owner was permitted at any time to take his or her own appeal. On its face this consent form was signed by officers and directors of the AOAO, was to be filed with the minutes of the Board of Directors of the AOAO, and contained a provision that it was to be mailed to each individual apartment owner.

Rule 6.1 states in relevant part, that "[t]he notice of appeal shall ... (c) be signed by the taxpayer or *his duly authorized representative.*" (Emphasis added.) The "Authorization" document signed by the President of the AOAO designated the law firm to file appeals. The "consent" document extended to the President the power to give such authorization on behalf of the individual apartment owners. Given its ordinary meaning, "authorization" is defined as "the act of authorizing" and "authorize" as "to endorse, empower, justify, or permit by or as if by some recognized or proper authority." *Webster's Third New Int'l Dictionary* 146 (1961). The documents attached to the Taxpayers' appeal notice plainly purported to "empower [and] permit" counsel to represent the Taxpayers.[17] Nothing more specific is set forth in Rule 6.1(c) as to the nature or quantum of proof of authorization required. In view of the attached documents, it would appear self evident that the signature and designation of the attorney on the face of the notice of appeal would suffice to satisfy Rule 6.1(c).

The board of review apparently construed the provision in this way since it did not reject the notice for "lack of authorization." We observe, also, that the City failed to raise any objection to the authorization presented in its memorandum in opposition. In view of the foregoing, the Taxpayers' appeal notice satisfied Rule 6.1 of the Rules of the Boards of Review of the City and County of Honolulu.[18]

## VII.

### A.

■ There being jurisdiction herein, we consider Taxpayers' first argument that the City cannot promulgate a rule pursuant to HRS § 91–1(4) (1993) and ROH § 1–2.1(g) (1998) which will have retroactive effect via reassessment of the subject properties. As subpoints to this argument, Taxpayers (1) urge this court in their reply brief to overrule *Hawaii Prince* or, in the alternative, to distinguish it from the instant case, (2) argue that HRS § 91–1(4) does not allow for the retroactive application of a rule and that ROH § 1–2.1(g) creates a presumption that rules are not retroactive, (3) cite *Tax Appeal of County of Maui v. KM Hawai'i Inc.*, 81 Hawai'i 248, 915 P.2d 1349 (1996), which allows for a refund, and (4) contend that the promulgation of a retroactive rule creates a "catch 22" that results in an equal protection violation. In response, the City argues that the court "was correct in ... concluding [as a remedy] that the City ... promulgate a rule pursuant to HRS chapter 91 regarding condominium classification criteria to apply ... for tax years 2000 and 2001," under *Hawaii Prince.*

### B.

With respect to subpoint 1, in *Hawai'i Prince*, this court considered whether "the

17. We note also that under Rule 3.4(a) (1987) of the Rules of the Boards of Review of the City and County of Honolulu, "attorneys at law duly qualified and entitled to practice before the Supreme Court of the State of Hawaii" can appear before the board in a representative capacity.

18. In light of this disposition we do not consider Taxpayers' argument that the Bylaws of the AOAO provide contractual authorization to file the notice. Also, we observe that the Bylaws were not a part of the record on appeal. *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 10 (setting forth items that may be made a part of the record on appeal). References and appendices not part of the record on appeal cannot be considered. This is a violation of HRAP 10 and "such a practice cannot be tolerated." *Orso v. City & County of Honolulu*, 55 Haw. 37, 39, 514 P.2d 859, 860 (1973).

City's appraiser's methodology used to determine the deduction for imparted value [as related to a golf course tax assessment] was clearly a 'rule' within the meaning of HRS § 91–1(4)." 89 Hawai'i at 393, 974 P.2d at 33. The City calculated the real property tax assessment for the Hawaii Prince Golf Course (HPGC), which included an assessment of imparted value.[19] *Id.* at 383, 974 P.2d at 23. The taxpayer challenged the tax court's conclusion that the HPGC did not increase the value of surrounding land and was, therefore, not entitled to a credit for imparted value. *Id.* Procedural guidelines were promulgated to determine imparted value in 1985. *Id.*

The City appraiser testified, however, that he discontinued using the guidelines in 1994 because, due to adverse court rulings, the guidelines caused him "too much heartache and too much problems." *Id.* He testified, however, that he retained the guidelines "in his head." *Id.* No written rules or guidelines were used to determine imparted value after 1994. *Id.* This court reviewed the credits given to various golf courses and could not determine any coherent method for determining imparted value. *Id.* at 391–92, 974 P.2d at 31–32. The City's procedure thus was seen as "result[ing] in a lack of uniformity and inequality in golf course assessments." *Id.* at 392, 974 P.2d at 32.

It was concluded that the City appraiser's unwritten methodology for determining deductions for imparted value fell within the definition of a rule for purposes of HRS § 91–1(4). *Id.* at 393, 974 P.2d at 33. The City was directed to follow rulemaking procedures set forth in HRS § 91–3 before applying imparted value deductions to golf course assessments. The City's total assessment of the golf course was therefore vacated and this court "order[ed] the City to reassess the taxpayer's property *after* it promulgates a rule establishing a methodology for imparted value, pursuant to the rulemaking procedures in the [HAPA], HRS § 91–3 (1993)." *Id.* at

383, 974 P.2d at 23 (emphasis added). Thus, *Hawaii Prince* itself is an example of this court specifically ordering the promulgation of a rule under chapter 91 and its retroactive application.

We decline Taxpayers' invitation to overrule *Hawaii Prince.* Further, the entirety of Taxpayers' argument that *Hawaii Prince* should be overruled is as follows:

Taxpayers believe that the [c]ourt, in all probability, specified an improper remedy in *Hawaii Prince* [, *supra* ]. There appears to be no indication of the Court's consideration of the implications of the specific provisions of Chapter 91, and/or potential violations of the equal protection provisions of the U.S. Constitution, by the application of the remedy chosen in that case. Taxpayers' position is that, if applied in the present case as the City urges, the retroactive rulemaking remedy expressed in *Hawaii Prince, [supra* ], should not be followed and should be expressly overruled.

This argument does not contain any reasoning, supported by citations to case law other than *Hawaii Prince* or other authority, to constitute a discernible argument. Taxpayers provide no argument as to why chapter 91 or the Equal Protection Clause would lead to a different result, nor do they point to any error in the reasoning of *Hawaii Prince.*[20] Accordingly, we are not persuaded by this contention. *See Wisconsin v. Pettit,* 171 Wis.2d 627, 492 N.W.2d 633, 642 (Ct.App. 1992) (stating that the appellate court "cannot serve as both advocate and judge"). Thus, we do not overrule *Hawaii Prince.*

As we understand Taxpayers' argument for distinguishing *Hawaii Prince* from the instant case, they argue that in *Hawaii Prince,* the classification provisions had not been previously applied to the golf course, whereas here, the classification provisions had been applied prior to the reclassification.

---

**19.** This court described the concept of imparted value saying that "properties surrounding a golf course receive a benefit in terms of higher property valuations due to their proximity to the golf course. The valuation of the golf course is, accordingly, credited for the higher values it imparts to the surrounding properties on a dollar-

for-dollar basis." *Hawaii Prince,* 89 Hawai'i at 391, 974 P.2d at 31.

**20.** This court did not consider any equal protection issue in *Hawaii Prince.*

Taxpayers seem to argue that in *Hawaii Prince* a retroactive rule was required to avoid a continuing discrepancy between HPGC and other similarly situated golf courses. According to Taxpayers, a retroactive rule is unnecessary in the instant case because the previous classification can be reverted back to and the status quo ante maintained.

But Taxpayers have provided no authority for distinguishing *Hawaii Prince* from the instant case. Taxpayers assume that the prior classification of "Apartment" should be reverted back to, despite the fact that the court found that the classification criteria used for determining whether a unit is an "apartment" was "nebulous." Accordingly, we are not convinced the instant case should be distinguished from *Hawaii Prince*.

### C.

#### 1.

With respect to Taxpayers' sub-point 2, ROH § 1–2.1(g) states in relevant part that "[n]o ordinance, resolution, or rules and regulations has any retrospective operation, *unless otherwise expressed or obviously intended.*" (Emphasis added.) The plain language of ROH § 1–2.1(g) makes it clear that rules can be applied retrospectively if that intent is "otherwise expressed or obviously intended." We therefor reject Taxpayers' assertion that under ROH § 1–2.1(g), a rule can only have a future effect and cannot have a retroactive application. "When interpreting a municipal ordinance, we apply the same rules of construction that we apply to statutes." *Weinberg,* 82 Hawai'i at 322, 922 P.2d at 376 (quoting *Bishop Square Assoc. v. City & County of Honolulu,* 76 Hawai'i 232, 234, 873 P.2d 770, 772 (1994) (quoting *Waikiki Resort Hotel v. City & County of Honolu-*

lu, 63 Haw. 222, 239, 624 P.2d 1353, 1365 (1981))). "The purpose of the ordinance may be obtained primarily from the language of the ordinance itself[.]" *Id.* The ROH grants power to promulgate rules that are retroactive. Insofar as the court's order may require a rule to be retroactive, the ROH authorizes such a rule.

#### 2.

We perceive no apparent conflict with HRS chapter 91. HRS § 91–1(4) defines a rule as an "agency statement of general or particular applicability and future effect that implements, interprets or prescribes law or policy." [21] The definition of a "rule" in the Federal Administrative Procedure Act (the Federal APA) contains language similar to HRS § 91–1(4). It provides at 5 U.S.C. § 551(4) that a rule is

> the whole or a part of an agency statement of general or particular applicability and *future effect* designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing.

(Emphasis added.) Hence both the Federal APA and HRS § 91–1(4) refer to an "agency statement of general or particular applicability and future effect" that implements, interprets or prescribes "law or policy."

The United States Supreme Court discussed the retroactive application of rules in *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988).

---

21. The definition of "rule" in HRS § 91–1(4) was taken from subsection 1(2) of the Revised Model Act. Hse. Stand. Com. Rep. No. 8 in 1961 House Journal, at 656. The final definition of "rule" adopted in the Model State Administrative Procedure Act (1961) read as follows:

> "[R]ule" means each *agency statement of general applicability that implements, interprets, or prescribes law or policy,* or describes the organization, procedure, or practice requirements of any agency. The term includes the amend-

ment or repeal of a prior rule, but does not include (A) statements concerning only the internal management of an agency and not affecting private rights or procedures available to the public, or (B) declaratory rulings issued pursuant to Section 8, or (C) intra-agency memoranda.

*Model State Admin. Procedure Acts* (amended 1981), 15 U.L.A. 185 (Master ed.2000) (emphasis added).

At issue was whether or not the Secretary of Health and Human Services could use the rulemaking authority granted by Congress to promulgate retroactive regulations setting limits on the levels of Medicare costs that would be reimbursed. *Id.* at 206, 109 S.Ct. 468. Although finding that the Secretary did not have authority to promulgate retroactive cost-limit rules, *id.* at 215, 109 S.Ct. 468, the Court did not foreclose the retroactive application of a rule, *id.* at 208, 109 S.Ct. 468. It stated:

> Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect *unless their language requires this result.* By the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules *unless that power is conveyed by Congress in express terms.* Even where some substantial justification for retroactive rulemaking is presented, courts should be reluctant to find such authority *absent an express statutory grant.*

*Id.* at 208–09, 109 S.Ct. 468 (emphases added) (internal citations omitted). Thus, despite the plain language of U.S.C. § 551(4), the Court determined that a "rule" may have retroactive effect if it contains language to that effect. In promulgating ROH § 1–2.1(g), the City, like Congress, expressly conveyed the power to adopt retroactive rules in express terms. Thus, a rule promulgated pursuant to ROH § 1–2.1(g) can be applied retroactively if its language so requires.

▮▮▮▮ This court discussed the validity of retroactive tax legislation in *Gardens at West Maui.* In *Gardens at West Maui,* the taxpayer, who was an owner of a time share interest, challenged the retroactive application of a county ordinance that changed the taxpayer's real property classification from "Apartment" to "Hotel Resort," thus subjecting the taxpayer to a higher tax rate. 90 Hawai'i at 337, 978 P.2d at 775. This court stated:

> The validity of retroactive tax legislation under the due process clause depends on whether, in light of the nature of the tax and the circumstances in which it is laid, the law is so harsh and oppressive as to transgress the constitutional limitation.... In *United States v. Carlton,* [512 U.S. 26, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994),] the United States Supreme Court set forth two primary factors to be considered when determining whether retroactive taxation violates the due process clause. First, the court asks whether the legislature's purpose in enacting the legislation was illegitimate or arbitrary. Second, the court examines whether the legislature acted promptly and established only a modest period of retroactivity.

*Id.* at 344, 978 P.2d at 782 (internal quotation marks and citations omitted). This court then applied the test from *Carlton* and found that retroactive application of the ordinance did not infringe upon the taxpayer's due process rights.[22] *Id.* at 345, 978 P.2d at 783. As the proposed rule referenced in the instant case is not before us, such an analysis would be premature. However, *Gardens at West Maui* and *Carlton* make it evident that a tax may be applied retroactively without violating due process.

### D.

In subpoint 3, Taxpayers refer to *KM Hawaii.* In *KM Hawaii,* the County of Maui appealed from a court judgment regarding real property tax assessments against KM Hawaii Inc. 81 Hawai'i at 249, 915 P.2d at 1350. The subject property was the Hyatt

---

**22.** In *United States v. Carlton,* 512 U.S. 26, 27, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994), the Court held that the retroactive application of an amendment to a provision of the federal estate tax statute, 26 U.S.C. § 2057, limiting the deduction for the proceeds of sales of stock to employee stock-ownership plans, did not violate the Due Process Clause of the Fifth Amendment. The Court noted that retroactive tax legislation had repeatedly been upheld against due process challenges. *Id.* at 30, 114 S.Ct. 2018. The Court then applied a two-prong test to determine whether the Due Process Clause was violated. *Id.* at 32, 114 S.Ct. 2018. First, it concluded that Congress's purpose in enacting the amendment to the statute was neither illegitimate or arbitrary. *Id.* Second, the Court concluded that the amendment had only a modest period of retroactivity and that Congress had acted quickly in enacting it. *Id.* at 32, 114 S.Ct. 2018.

Regency Maui. *Id.* at 250, 915 P.2d at 1351. The County assessor testified that the County used the Cost Approach [23] for "mom and pop-type hotels" and "brand new" resort hotels, but the Market Data Approach [24] to assess properties like the Hyatt, which was classified as a "Class A" resort hotel. *Id.* at 251, 915 P.2d at 1352. The Tax Appeal Court found that the County's assessments were not uniform and equal and were in violation of HRS chapter 232 and the equal protection clauses of both the federal and Hawaii Constitutions. *Id.* at 252, 915 P.2d at 1353. These finding were not challenged on appeal. *Id.* This court then listed three potential remedies to address the discriminatory tax, stating that,

> a taxing authority "found to have imposed an impermissibly discriminatory tax retains flexibility in responding to this determination." [*McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 39, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) ]. The taxing authority may correct the impermissible discrimination by: (1) *refunding the difference between the tax a taxpayer paid and the tax that it would have paid had it been assessed in the same manner as others in its class;* (2) retroactively assessing, "to the extent consistent with other constitutional restrictions," members of the taxpayer's class in the manner that the taxpayer had been assessed; or (3) using a combination of a partial refund to the taxpayer and a partial retroactive assessment of the others within the taxpayer's class. *Id.* at 40–41, 110 S.Ct. 2238.

*Id.* at 256–57, 915 P.2d at 1357–58 (footnotes omitted) (emphasis added). The case was remanded to the Tax Appeal Court with instructions to allow the county to choose one of the aforementioned remedies. *Id.* at 257, 915 P.2d at 1358.

As we understand Taxpayers' argument, the first *KM Hawaii* remedy of a refund should be afforded in the instant case. But in *KM Hawaii,* there were clear and established methods for assessing real property that the county was not applying uniformly. In the present case, however, there was no rule promulgated regarding classification for the "Hotel and resort" category and the classification for "Apartment" was "nebulous." Accordingly, were such a remedy appropriate, it would be premature at this point to order it inasmuch as the rule has not yet been promulgated and an assessment made.

### E.

The Taxpayers' fourth subpoint is that the use of a retroactive rule will result in a "Catch 22" because,

> [i]n short: a new rule is not a rule if it is applied retroactively. Even if the rule could be applied retroactively, it would have to be required to be applied to all condominium apartments in the county involved in any-type [sic] of short-term rental, because the ordinances [ROH § 8–7.1(a)] require uniformity. The condominium apartments not involved in this appeal, [sic] cannot have their assessments changed, so application of a new rule retroactively cannot be done uniformly.

To the contrary, as mentioned previously, ROH § 1–2.1(g) allows for the retroactive application of a rule if the rule expressly indicates that it should so apply or if the intent to apply it retroactively is obvious. *See* discussion, *supra.* ROH § 8–7.1(a) states in relevant part:

> The director of finance shall cause the fair market value of all taxable real property to be determined and annually assessed by the market data and cost approaches to value using appropriate systematic methods suitable for mass valuation of proper-

---

23. The opinion described the Cost Approach as follows: "Under the 'cost approach,' one determines the cost of constructing the building and subtracts an amount for depreciation to determine the building's present value and then adds the value of the underlying land." *Tax Appeal of County of Maui v. KM Hawaii Inc.,* 81 Hawai'i 248, 251, 915 P.2d 1349, 1352 (1996).

24. The Market Data Approach was described as follows: "Under the 'market data approach,' one surveys the market to determine if there have been a sufficient number of recent voluntary sales of similar property to provide dependable information as to the selling rate of 'comparable property.' " *Id.*

ties for taxation purposes, so selected and applied to obtain, *as far as possible,* uniform and equalized assessments throughout the county.

(Emphasis added.) This ordinance does not require complete and exact uniformity as Taxpayers seem to suggest but, rather, provides that the valuations should be as uniform and equal as possible. Also, Taxpayers merely suggest that there are other properties that are similarly situated to the properties in the instant case without providing any evidence of the existence of such properties, and in the absence of specific cases we need not decide such a question.

## VIII.

In their reply brief, Taxpayers ask this court to take judicial notice "that the form of notice sent out by the City did not comply with the specific and clear notice requirements of [ROH § 8–2.1(c)]." Taxpayers argue that a change in the classification of property is not effective unless the City complies with the requirements therein. This argument was not raised before the court.[25] "As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases." *State v. Moses,* 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003); *see, e.g., State v. Hoglund,* 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) ("Generally, the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal."). Accordingly, we do not address this argument.

## IX.

In their second argument Taxpayers maintain that "the tax appeal court should have restored ... the disputed units to their preexisting ['Apartment'] classification." Taxpayers do not specify for what period the classification should be changed to "Apart-

ment." In ordering promulgation of a rule and reassessment thereunder, the court impliedly rejected Taxpayers' argument that the classification of Waikiki Shoreline should be restored to "Apartment."

Neither party directs this court to any authority pertaining to this issue other than *Hawaii Prince.* However, *Hawaii Prince* is not dispositive because that case did not address restoration of a classification. The parties' arguments focus on their views as to how Waikiki Shoreline should be classified-either as an "apartment" or "hotel and resort."[26] We cannot say, based upon the arguments of the parties, that the court was wrong inasmuch as the court determined the "*Apartment*" classification criteria was "nebulous."

## X.

Taxpayers' last argument is that "the tax appeal court should have ordered the refund of money collected on the basis of the improper assessments and should not have permitted the City to keep [the] funds collected[.]" The City maintains that the court "was correct in not ordering the City to refund the monies collected ... pending reassessment." In their summary judgment memorandum, Taxpayers requested a "refund of ... taxes ... in excess of those which would have been otherwise collected had the properties not been improperly reclassified as 'Hotel and resort.' " By its order, the court impliedly rejected Taxpayers' argument that a refund should be ordered.

The parties have provided only limited argument on this issue and have referred this court only to ROH § 8–1.7 and to *Hawaii Prince.* Again, the entirety of Taxpayers' argument that a refund should be ordered is as follows:

> Since the Tax Appeal Court did not order the classification to revert to its previous

---

25. Taxpayers also did not raise the issue of proper notice in their Opening Brief.

26. The City reiterates that the court "was correct in not reclassifying the subject units to 'Apartment' " because the classification criteria used for determining whether a unit is an "apart-

ment" were also "nebulous." In their summary judgment memorandum, Taxpayers requested that the court "restor[e] the ... former classification as 'Apartment.' " In its order, the court denied all remaining relief requested.

status, as "Apartment" with the accompanying lower rate, the Tax Appeal Court could not have ordered the refund of the excessive taxes collected. However, it is clear that even under the present circumstances, the City is not entitled to keep the taxes collected. ROH Sec. 8–1.7 states in part: "The director shall collect all taxes under this chapter according to the assessments...." Since there is presently no assessment for the apartments in question for the tax years 2000 and 2001, the director of Budget and Fiscal Services has no authority to keep the money collected. This is problematic, since [Taxpayers] actually agree that the director should be entitled to keep the amount attributable to taxation on an "Apartment" classification. The only real solution to this anomaly is to order the apartments returned to "Apartment" and refund the balance under established procedures.

ROH § 8–1.7 does not address refunds either explicitly or impliedly. Although Taxpayers do not specifically argue *KM Hawaii* in the portion of their Opening Brief addressing a refund, it appears, as stated *supra*, that they rely on that case. However, as noted previously, the remedies set forth in *KM Hawaii* were imposed upon a finding that a taxing authority had imposed an impermissibly discriminatory tax. No such finding has been made in the instant case.

The City maintains that *Hawaii Prince* is dispositive. In *Hawaii Prince,* however, the taxpayer did not request a refund and the court did not order one pending reassessment. 89 Hawaii at 28–29, 968 P.2d at 195–96. In any event, the parties do not cite to any law or doctrine compelling such a course.[27] Hence, we cannot say that the court was wrong in not ordering a refund.

## XI.

Based on the foregoing, we affirm the court's July 23, 2002 order granting in part and denying in part Taxpayers' motion for summary judgment.

---

**27.** For example, ROH § 8–12.12(a) provides in relevant part that

> [i]n any case of any appeal to the tax appeal court, 50 percent of the tax paid upon the amount of the assessment actually in dispute and in excess of that admitted by the taxpayer shall, pending the final determination of the appeal, be paid by the director into the "litigated claims account." If the final determination is in whole or in part in favor of the appealing taxpayer, the director shall repay to the taxpayer out of the account[.]