185 P.3d 855

**Peter B. CARLISLE, in his official capacity as the Prosecuting Attorney of the City and County of Honolulu, on behalf of the State of Hawaii, Petitioner–Appellant,**

v.

**ONE (1) BOAT, 18.5 Feet With Fiberglass Hull, Blue and White in Color, Registration No. HA 2709 D, Hull Identification No. GLA72495M77G, with Trailer, Serial No. TUD051894HDNWP, and Gas Engine with Winch System (Estimated Value: $4,000.00); One (1) Evinrude Brand Outboard Engine, 112 Horsepower, Serial No. G04072044, and One (1) Evinrude Brand Outboard Engine, 30**

**Horsepower, Serial No. G03586474 (Estimated Value: $1,000.00); Two (2) Monofilament Gill Nets, Each Approximately 1500 Feet in Length (Estimated Value: $3,000.00) (Aggregate Estimated Value: $8,000.00), Defendant**

**and**

**Dang Van Tran and Sang Tran, Interested Persons– Appellees.**

**No. 26995.**

Intermediate Court of Appeals of Hawai'i.

Feb. 27, 2008.

Charlotte J. Duarte, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Petitioner–Appellant.

Brian Y.Y. Ho, on the briefs, for Interested Persons–Appellees.

RECKTENWALD, C.J., WATANABE and NAKAMURA, JJ.

Opinion of the Court by
RECKTENWALD, C.J.

Petitioner–Appellant Peter B. Carlisle, in his official capacity as the Prosecuting Attorney of the City and County of Honolulu, on behalf of the State of Hawai'i (the State), filed a Verified Petition for Forfeiture seeking to forfeit property including a boat. That property was allegedly used to commit intentional violations of Hawaii Administrative Rules (HAR) §§ 13–95–70, entitled *Stony corals,* and 13–95–71, entitled *Live rocks.*

Claimants/Interested Persons–Appellees Dang Van Tran (Dang) and Sang Tran (Sang) (collectively, Claimants) filed a motion to dismiss the petition, arguing that the petition failed to state a claim upon which relief could be granted and that the Circuit Court of the First Circuit (circuit court) lacked subject matter jurisdiction. In an order entered on February 1, 2002 (February 1, 2002 Order), the circuit court granted the motion.[1] The circuit court found that the offenses that were allegedly committed in connection with the use of the property were not "covered offenses" within the meaning of Hawaii Revised Statutes (HRS) § 712A–4 (1999), and thus could not provide the basis for forfeiture.

On December 6, 2004, the circuit court reduced the February 1, 2002 Order to a judgment entered in favor of Claimants and against the State (Judgment). On December 9, 2004, the State filed a notice of appeal from the Judgment. On January 20, 2005, the circuit court entered an order nunc pro tunc to February 1, 2002, granting in part and denying in part Claimants' motion to strike the judgment, or in the alternative, to amend the Judgment (January 20, 2005 Nunc Pro Tunc Order Amending Judgment).[2] The State filed a second notice of appeal on January 24, 2005.

Claimants contend that the State's "right to prosecute this appeal is time barred" because the State did not file its notice of appeal until two years and nine months after the February 1, 2002 Order, which Claimants

maintain was an appealable final order. The State contends that this court has jurisdiction and that the circuit court erred in granting Claimants' motion to dismiss the petition because Claimants' property was forfeitable under HRS Chapter 712A and HRS § 199–7 (1993 & Supp.1999).

We conclude that we have appellate jurisdiction and that the circuit court erred in dismissing the petition. Accordingly, we vacate the February 1, 2002 Order, the December 6, 2004 Judgment, and the January 20, 2005 Nunc Pro Tunc Order Amending Judgment, and remand for further proceedings.

## BACKGROUND

The State filed the petition on March 29, 2001. In the petition, the State alleged that on the night of October 14, 2000, at around 9:00 p.m., Department of Land and Natural Resources (DLNR), Division of Conservation and Resource Enforcement (DOCARE) officers, while on patrol in a DOCARE boat, observed two males in a brightly lit vessel fishing with a large gill net off the Wai'anae coast of the island of O'ahu. During their surveillance, the officers witnessed Kalani Baldarama (Baldarama) pulling up a gill net and Dang operating the vessel. The officers then proceeded to the vessel. When the officers arrived, they saw Dang and Baldarama pulling up a net without a diver in the water to assist in retrieval of the net.

According to the DOCARE officers, once they arrived at Claimants' boat, they identified themselves and stated their intention to conduct an inspection of the boat. Two of the DOCARE officers boarded Claimants' boat while the third officer remained alongside in the DOCARE boat. The officers told Dang and Baldarama to continue to retrieve the net and requested that they not remove any coral from the net or the boat, as the officers needed to determine whether the coral was alive.

The DOCARE officers stated that Dang became angry at this request and told the officers that if the net was tangled he would send his diver down. The officers responded

---

**1.** The Honorable Reynaldo D. Graulty presided.

**2.** The Honorable Marcia J. Waldorf presided.

that a diver should have been in the water to prevent damage to the coral and it was evident that coral had already been damaged and removed from the water. While the net was in the process of being pulled in, Baldarama put on his scuba gear and descended to untangle the net and release regulated fish.

The officers stated that even with Baldarama in the water to untangle the net from the bottom, the DOCARE officers on Claimants' boat witnessed several "large" pieces of live coral stuck in the net. According to the officers, Dang attempted to throw back into the water some of the coral stuck in the net and became "enraged" when officers prevented him from doing so. During this encounter, the officers had to physically restrain Dang in order to prevent him from removing the coral stuck in the net.

Shortly thereafter, Dang calmed down, but began to complain of chest pains and shortness of breath. The officers then escorted Claimants' boat to shore and arranged for an ambulance to pick up Dang to take him for treatment.[3] Shortly thereafter, Dang's son, Sang, arrived at the harbor and notified the officers that he was the registered owner of the boat. The officers informed Sang that the boat, the nets, a trailer, the coral found in the nets, and other items left on the boat were being seized as evidence.

The petition further alleged that under the forfeiture provisions codified in HRS Chapter 712A, Claimants' property[4] was subject to seizure and forfeiture because the offenses Dang allegedly committed, "Intentional Taking of Live Coral," in violation of HAR § 13–95–70, and "Intentional Taking of Live Rock," in violation of HAR § 13–95–71,[5] were "covered offenses" pursuant to HRS § 712A–4(a). The petition alleged that pursuant to HRS § 712A–5,[6] probable cause existed for the seizure and forfeiture of Claimants' property as "it was used or intended for use, including without limitation, in the commission of, attempt to commit, or conspiracy to commit a covered offense, or which facilitated or assisted in such activity...." *See* HRS § 712A–5(b) (Supp.2000).

The parties stipulated to extend the time for Claimants to answer, and on June 1, 2001, Claimants filed an answer stating that the State's "[p]etition fails to state a claim upon which relief can be granted." On June 4, 2001, Claimants filed a Notice of Claim, asserting that the property belonging to them was wrongfully seized. Then, on November 30, 2001, Claimants filed the motion to dismiss the petition.

On December 19, 2001 the circuit court held a hearing on the motion. On February 1, 2002, the circuit court filed the order that granted the motion to dismiss the petition.

---

3. Dang was transported to a hospital, and was later arrested. According to an affidavit of a DOCARE officer, which was attached to the petition, Dang was arrested "for the offense of Obstruction of Government Operations ([Hawaii Revised Statutes (HRS) §]710–1010) and Taking Live Coral ([Hawaii Administrative Rules (HAR) §]13–95–70)."

4. The petition sought forfeiture of the following items:
 ONE (1) BOAT, 18.5 FEET WITH FIBERGLASS HULL, ... WITH TRAILER, ... AND GAS ENGINE WITH WINCH SYSTEM ... ONE (1) EVINRUDE BRAND OUTBOARD ENGINE, 112 HORSEPOWER, ... ONE (1) EVINRUDE BRAND OUTBOARD ENGINE, 30 HORSEPOWER, ... TWO (2) MONOFILAMENT GILL NETS, EACH APPROXIMATELY 1500 FEET IN LENGTH[.]

5. HAR § 13–95–70 (1998), entitled, *Stony corals*, provided in pertinent part:
 (a) The intentional taking, breaking, or damaging with crowbar, chisel, or any other imple-

ment of any live stony coral ... is prohibited except with a permit....
 HAR § 13–95–71 (1998) entitled, *Live rocks*, provided in pertinent part that:
 [t]he intentional taking, breaking, or damaging with crowbar, chisel, or any other implement of any rock or coral to which marine life is visibly attached or affixed is prohibited except with a permit....
 HAR § 13–95–2 (1998) entitled, *Penalty*, provided that "[a] person violating this chapter shall be punished as provided by law."

6. HRS § 712A–5 (Supp.2000) entitled, "Property subject to forfeiture; exemption[,]" provided in pertinent part:
 (1) The following is subject to forfeiture:
 (a) Property described in a statute authorizing forfeiture;
 (b) Property used or intended for use in the commission of, attempt to commit, or conspiracy to commit a covered offense, or which facilitated or assisted such activity;
 ....

In the February 1, 2002 Order the circuit court found that: *in rem* forfeiture proceedings under HRS § 712A are civil proceedings governed by the Hawai'i Rules of Civil Procedure (HRCP); the law does not favor forfeiture; none of the offenses that Claimants were charged with were "covered offenses" as defined under HRS § 712A–4(a); and the provisions HRS § 712A–4(b)–(d) were not applicable to Claimants' case.[7] Accordingly, the circuit court ordered that Claimants' "Motion to Dismiss is granted based on: (a) the failure of the Petition to state a claim upon which relief can be granted . . . ; and (b) a lack of subject matter jurisdiction . . . over the claims in the Petition, pursuant to Rule 12(b)(1) and 12(h)(3), [HRCP]."

However, a final judgment was not entered until December 6, 2004, over two years and nine months later. Claimants then filed a motion to strike the Judgment, or in the alternative, to amend the Judgment to correct errors and enter judgment nunc pro tunc, effective February 1, 2002.

On December 9, 2004 the State filed the first notice of appeal, appealing from the December 6, 2004 Judgment. Thereafter, the circuit court entered the January 20, 2005 Nunc Pro Tunc Order Amending Judgment. The order found that "[p]ursuant to Rule 23 of the Rules of the Circuit Court of the State of [Hawai'i (RCCH) ] and Rule 58 of the [HRCP]" as the prevailing party, Claimants were required to file a separate judgment for the February 1, 2002 Order, however, no judgment was submitted until December 6, 2004. Accordingly, the circuit court denied Claimants' request to strike the Judgment in its entirety. The circuit court also denied Claimants' request to delete a paragraph of the judgment which provided that the parties would bear their own costs,

but granted Claimants' request to correct a typographical error.

The circuit court granted Claimants' request to enter the Judgment *nunc pro tunc*, effective February 1, 2002, but refused Claimants' request to retroactively set the date for beginning the State's time period for appeal to February 1, 2002. Citing *Stratis v. Pacific Insurance Co., Ltd.,* 8 Haw.App. 79, 82–83, 794 P.2d 1122, 1124 (1990), the circuit court stated that the "*nunc pro tunc* provision cannot be used to defeat [the State's] right to appeal from the Judgment, and [the State's] time to appeal runs from actual date of entry of this Court's order."

On January 24, 2005, the State filed a second notice of appeal, appealing from the December 6, 2004 Judgment and the January 20, 2005 Nunc Pro Tunc Order Amending Judgment.

## ISSUES ON APPEAL

Claimants assert that this court lacks appellate jurisdiction because the State failed to timely appeal from the circuit court's February 1, 2002 Order.

The State contends that this court does have jurisdiction, and argues that:

As a matter of law, the trial court erred in dismissing the [petition] . . . on the basis that the offenses that formed the basis for the forfeiture action were not offenses for which forfeiture could be had. The dismissal of the Petition was contrary to a plain reading of applicable statutes, as well as statutory legislative history. The inclusion of H.R.S. Chapter 712A forfeiture in H.R.S. Section 199–7, rather than in other statutes under H.R.S. Chapter [sic] Title

---

7. At the time of the October 14, 2000 incident, HRS § 712A–4 (Supp.1999) stated:

> **Covered offenses.** Offenses for which property is subject to forfeiture under this chapter are:
> (a) All offenses which specifically authorize forfeiture;
> (b) Murder, kidnapping, gambling, criminal property damage, robbery, bribery, extortion, theft, unauthorized entry into motor vehicle, burglary, money laundering, trademark counterfeiting, insurance fraud, promoting a dangerous, harmful, or detrimental drug, or commercial promotion of marijua-

> na, which is chargeable as a felony offense under state law;
> (c) The manufacture, sale, or distribution of a controlled substance in violation of chapter 329, promoting detrimental drugs or intoxicating compounds, promoting pornography, promoting pornography for minors, or promoting prostitution, which is chargeable as a felony or misdemeanor offense, but not as a petty misdemeanor, under state law; and
> (d) The attempt, conspiracy, solicitation, coercion, or intimidation of another to commit any offense for which property is subject to forfeiture.

12 or its administrative rules, provided sufficient specificity to satisfy the requirements of H.R.S. Section 712A–4(a), establishing violations of H.A.R. Rules 13–95–70 and 13–95–71 as forfeitable offenses, and provided [Claimants] with sufficient notice, statutory and actual, that they faced such possible civil forfeiture remedies for those violations. In dismissing the Petition, the trial court attempted to rewrite H.R.S. Title 12, usurped the legislative function and ignored legislative intent.

## STANDARDS OF REVIEW

### A. Statutory Interpretation—Civil

Questions of statutory interpretation are questions of law to be reviewed *de novo* under the right/wrong standard.

Our statutory construction is guided by the following well established principles:

[When construing a statute,] our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning.

*Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152,* 107 Hawai'i 178, 183, 111 P.3d 587, 592 (2005) (internal quotation marks, brackets, and ellipses omitted) (quoting *Guth v. Freeland,* 96 Hawai'i 147, 149–50, 28 P.3d 982, 984–95 (2001)).

### B. Motion to Dismiss—Civil

■ A trial court's grant or denial of a motion to dismiss for "lack of subject matter jurisdiction is a question of law, reviewable *de novo.*" *Norris v. Hawaiian Airlines, Inc.,* 74 Haw. 235, 239, 842 P.2d 634, 637 (1992), *aff'd, Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). In *Norris,* the Hawai'i Supreme Court adopted the view of the Ninth Circuit Court of Appeals in *Love v. United States,* 871 F.2d 1488, 1491 (9th Cir.), *opinion amended on other grounds and superseded by Love v. United States,* 915 F.2d 1242 (9th Cir.1989), that:

review of a motion to dismiss for lack of subject matter jurisdiction is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff. Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief.

*Norris,* 74 Haw. at 240, 842 P.2d at 637 (internal quotation marks, citation, and brackets omitted.)

■ "However, when considering a motion to dismiss pursuant to [HRCP] Rule 12(b)(1) the trial court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *Norris,* 74 Haw. at 240, 842 P.2d at 637 (internal quotation marks, citation, and brackets in original omitted; bracketed material added).

### C. Failure To State A Claim Upon Which Relief Can Be Granted

■ In appraising the sufficiency of the complaint under [HRCP] Rule 12(b)(6), the accepted rule is that well-pleaded allegations of fact are taken as admitted and the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Marsland v. Pang,* 5 Haw.App. 463, 474, 701 P.2d 175, 185–86 (1985).

## DISCUSSION

### A. This Court Has Jurisdiction To Decide This Appeal

#### 1. The circuit court's February 1, 2002 Order was not a "final judgment," and therefore the State timely filed its appeal

Claimants assert that this court does not have appellate jurisdiction because "[t]he deadline for [the State] to file a notice of appeal was March 4, 2002[,]" 30 days after the circuit court filed its February 1, 2002 Order. This court is obliged to ensure that it has appellate jurisdiction. *See Captain Andy's Sailing, Inc. v. Dept. of Land and Natural Res.,* 113 Hawai'i 184, 193–94, 150 P.3d 833, 842 (2006).

Claimants contend that the February 1, 2002 Order was a final and appealable order because it "clearly extinguished all claims." Claimants argue that the State, "under Rule 4(a)(1), [Hawaii Rules of Appellate Procedure (HRAP)], was required to challenge [the February 1, 2002 Order] within 30 days after it was filed[,]" and that accordingly the State's right to prosecute this appeal is time barred under HRAP Rule 4(a)(1).[8]

However, Claimants' contention is without merit because the February 1, 2002 Order was not a final judgment from which the State could appeal. Because the State petitioned for *in rem* forfeiture pursuant to HRS § 712A–12, the HRCP apply. *State v. Tuipuapua,* 83 Hawai'i 141, 153, 925 P.2d 311, 323 (1996). "HRCP Rule 58 applies to civil actions 'in the circuit courts of the State[,]' " and that rule "requires that '[e]very judgment shall be set forth on a separate document.' " *Alford v. City and County of Honolulu,* 109 Hawai'i 14, 20, 122 P.3d 809, 815 (2005) (quoting HRCP Rule 58). The Ha-

wai'i Supreme Court has established "bright line rules," holding that "[a]n appeal may be taken from circuit court orders resolving claims against parties only after the orders have been reduced to a judgment and the judgment has been entered in favor of and against the appropriate parties pursuant to HRCP [Rule] 58[.]" *Jenkins v. Cades Schutte Fleming & Wright,* 76 Hawai'i 115, 119, 869 P.2d 1334, 1338 (1994). Accordingly, an order disposing of a circuit court case is appealable when the order is reduced to a separate judgment. *Id.* at 119, 869 P.2d at 1338. Thus, even if the circuit court's February 1, 2002 Order resolved all the claims regarding all parties, under HRCP Rule 58 and the Hawai'i Supreme Court's holding in *Jenkins,* the circuit court's February 1, 2002 Order needed to be reduced to a separate judgment before the period for the State's appeal began to run.

#### 2. As the prevailing party, Claimants were required to submit a proposed judgment to the circuit court

Furthermore, under RCCH Rule 23, Claimants, as the prevailing parties, had a duty to prepare a final judgment for the circuit court. RCCH Rule 23 states in pertinent part that "[w]ithin 10 days after decision of the court awarding any judgment, decree or order ... the prevailing party, unless otherwise ordered by the court, shall prepare a judgment...." *See Jenkins,* 76 Hawai'i at 118 n. 3, 869 P.2d at 1338 n. 3 (stating "that Rule 23 ... *requires* the prevailing party to prepare and submit to the circuit court a proposed judgment ...") (emphasis in original); *Alford,* 109 Hawai'i at 23 n. 9, 122 P.3d at 818 n. 9 (2005) (stating "RCCH Rule 23 requires a prevailing party to submit a proposed judgment to the circuit judge for settlement within ten days after a decision awarding judgment."). Thus, when

---

8. Hawai'i Rules of Appellate Procedure (HRAP) Rule 4 provides in pertinent part:
 (a) **Appeals in Civil Cases.**
 (1) TIME AND PLACE OF FILING. When a civil appeal is permitted by law, the notice of appeal shall be filed within 30 days after entry of the judgment or appealable order.
 The notice of appeal shall be filed with the clerk of the court from which the appeal is

taken. If a notice of appeal is mistakenly filed with the appellate clerk, the appellate clerk shall note on it the date of receipt and shall transmit the notice to the clerk of the court appealed from. The date of receipt by the appellate clerk shall be deemed to be the date the notice of appeal was filed with the clerk of the court.

the circuit court granted Claimants' motion to dismiss the petition for forfeiture, it was Claimants' responsibility to prepare a separate judgment with respect to the February 1, 2002 Order.

■ Therefore, because the February 1, 2002 Order was not reduced to a final judgment until December 6, 2004, the State's notice of appeal filed on December 9, 2004 was within the 30-day time limit for appeals set forth in HRAP Rule 4(a)(1). Accordingly, the State's appeal was timely filed and this court has jurisdiction.

### B. The Circuit Court Erred In Dismissing The State's Petition For Forfeiture

In the February 1, 2002 Order, the circuit court dismissed the State's petition for forfeiture of Claimants' property on grounds that the charged offenses were not ones which "specifically authorize forfeiture." The circuit court reasoned that:

> 11. . . . a covered offense under H.R.S. § 712A-4(a) is an offense which specifically authorizes forfeiture; and in this case, neither H.A.R. §§ 13-95-70 or 13-95-71, or any of the penalty provisions for a violation of these two administrative rules, specifically authorize forfeiture as required by H.R.S. § 712A-4(a); and unless an offense or penalty provision for the offense specifically authorizes forfeiture, the offense is not a covered offense under H.R.S. § 712A-4(a); and therefore H.A.R. §§ 13-95-70 and 13-95-71 are not covered offenses because the alleged offenses, or their penalty provisions, do not specifically authorize forfeiture as required by H.R.S. §§ [sic]712A-4(a).

This court reviews the circuit court's interpretation of HRS Chapter 712A and other statutes under the *de novo*, right/wrong standard. *Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152,* 107 Hawai'i at 183, 111 P.3d at 592. When interpreting statutes, this court's "foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the

statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." *Silva v. City and County of Honolulu,* 115 Hawai'i 1, 6, 165 P.3d 247, 252 (2007) (citation omitted).

■ Applying these principles here, we conclude that the circuit court's analysis is contrary to both the plain language of the applicable statutes and rules, as well as the intent of the legislature as reflected by the legislative history. As we discuss below, HRS § 199-7 authorizes the DLNR to initiate forfeiture proceedings for violations of DLNR rules, including the rules allegedly violated here, and accordingly those rules were "covered offense[s]" for purposes of HRS Chapter 712A (the Forfeiture Act).[9]

#### 1. The circuit court's analysis is contrary to the plain language of the applicable statutes and rules

At the time of the October 14, 2000 incident, HRS § 199-7 stated in pertinent part that:

> **Search and seizure, forfeiture of property.** (a) Any police officer or agent of the department of land and natural resources upon whom the board of land and natural resources has conferred powers of police officers, shall have the authority to conduct searches on probable cause as provided by law and to seize any equipment, article, instrument, aircraft, vehicle, vessel, business records, or natural resource used or taken in violation of the provisions contained in chapters 6E and 6K, or *title 12, or any rules adopted thereunder.* For purposes of this section, "natural resource" includes any archaeological artifacts, minerals, any aquatic life or wildlife or parts thereof, including their eggs, and any land plants or parts thereof, including seeds.
>
> (b) Any equipment, article, instrument, aircraft, vehicle, vessel, business records, or natural resource seized is subject to forfeiture pursuant to chapter 712A. Unless otherwise directed by the court pursuant to chapter 712A, any item, other than a

---

9. HRS § 712A-20 (1993) provides that Chapter 712A may be cited as the "Hawaii omnibus criminal forfeiture act."

natural resource, seized shall be ordered forfeited to the State for disposition as determined by the department, or may be destroyed, or may be kept and retained and utilized by the department or any other state agency. If not needed or required by the department or other state agency, the forfeited items shall be disposed of as provided by chapter 712A. Notwithstanding any other law to the contrary, any live natural resource seized may be immediately returned to its natural environment or suitable habitat or may be disposed of as determined by the department; provided that if the natural resource disposed of was unlawfully seized, the department shall be liable to the owner for the fair market value of the items disposed of.

(Supp.1999) (emphasis added).

On its face, HRS § 199–7 unambiguously provides that property used in violation of Title 12 and the rules adopted thereunder is subject to seizure and forfeiture. HRS § 187A–5, which is part of Title 12, authorizes the adoption of the rules that Dang allegedly violated, HAR §§ 13–95–70 and –71. Thus, those rules were "adopted" under Title 12, within the meaning of HRS § 199–7(a).

Moreover, HRS § 199–7(b) also provides that forfeiture shall be "pursuant to chapter 712A." HRS Chapter 712A establishes procedures for the State to follow when it seeks to forfeit property for violations of certain offenses. Section 712A–5(1)(b) provides that "[p]roperty used or intended for use in the commission of, attempt to commit, or conspiracy to commit *a covered offense,* or which facilitated or assisted such activity[,]" is subject to forfeiture. HRS § 712A–5(1)(b) (Supp.2000) (emphasis added). HRS § 712A–4(a) (Supp.1999), entitled "Covered offenses," provides that "[o]ffenses for which property is subject to forfeiture under this chapter are: (a) All offenses which specifically authorize forfeiture[.]"

▮ Under the circuit court's reading of HRS § 712A–4(a), to be a covered offense, either the language of the offense itself or the penalty provision applicable to that offense must specifically state that property is subject to forfeiture. However, when HRS § 712A–4(a) is read in light of the rest of Chapter 712A, as well as the relevant provisions in Title 12, the plain language of the statute does not support the circuit court's narrow interpretation. Rather, as long as there is specific authorization for forfeiture applicable to the charged violation, even if that authorization is provided elsewhere in the HAR or the HRS, then the charged violation is a "covered offense" under Chapter 712A.

Most notably, although "covered offense" is implicitly defined in HRS § 712A–4, it is also defined in § 712A–1 entitled "Definitions." "Covered offense" is defined there as "any crime set forth in section 712A–4 or any other offense for which forfeiture is provided by the *law relating to a particular offense.*" HRS § 712A–1 (Supp.2000) (emphasis added). There is nothing in that provision which requires that the authorization for forfeiture appear in the language of the covered offense itself; to the contrary, the definition makes clear that a provision such as HRS § 199–7 which "relat[es] to" the covered offense, and provides for forfeiture for a violation of it, is sufficient. HRS § 712A–4(a)'s reference to "offenses which specifically authorize forfeiture" should be read in light of § 712A–1's reference to "the law relating to a particular offense[.]" When so read, HRS § 712A–4(a) does not require that the authorization for forfeiture be included in the covered offense itself. *See* HRS § 1–16 (1993) ("Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another.").

Claimants contend that "HRS § 199–7, merely delineates the nature and scope of the police powers bestowed on enforcement officers of the [DLNR]...." However, this argument is unpersuasive, since the power of DLNR enforcement officers to seize property for purposes of forfeiture is clearly established elsewhere in the HRS. HRS § 199–4(a) provides that enforcement officers commissioned by the Board of Land and Natural Resources "shall have and may exercise all of the powers and authority of a police officer, including the power of arrest, and shall en-

force all state laws and rules, and county ordinances...." HRS § 712A–6(1)(c)(iv) provides that property may be seized without court process by a "law enforcement officer [who] has probable cause to believe that the property is subject to forfeiture[.]" HRS § 712A–1 defines law enforcement officers as those "vested by law with a duty to maintain public order, to make arrests for offenses, or to enforce the criminal laws...." DLNR enforcement officers clearly fall within that definition. *See* HRS § 199–4(a).

In short, under Claimants' interpretation, the provisions in HRS § 199–7 authorizing forfeitures would be superfluous. *See Camara v. Agsalud*, 67 Haw. 212, 215–16, 685 P.2d 794, 797 (1984) ("It is a cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all the words of the statute."). However, under the State's interpretation, the provisions do have meaning since they identify the specific offenses for which forfeiture is authorized.

In sum, when HRS § 712A–4 is read in light of the other provisions of Chapter 712A and Title 12, there is no ambiguity. HRS § 199–7 provides the specific authorization required to establish that violations of HAR §§ 13–95–70 and 13–95–71 are "covered offenses" within the meaning of Chapter 712A, and the circuit court accordingly erred in granting the motion to dismiss.

### 2. The legislative history of HRS § 199–7 and Chapter 712A supports the conclusion that HRS § 199–7 provides sufficiently specific authorization for forfeiture

Claimants suggest that the legislative history does not support the State's contention that the Claimants' property is subject to forfeiture. However, the legislative history of HRS § 199–7 and Chapter 712A confirms that the legislature intended § 199–7 to authorize DLNR to seize and forfeit property used in violating HRS Title 12, and any rules adopted thereunder, without requiring each individual statute or rule, or applicable penalty provision, to specifically refer to forfeiture.

First, as we discuss below, the legislative history of § 199–7 for the period from its adoption in 1978 through the adoption of Chapter 712A in 1988 clearly establishes that the legislature intended § 199–7 to provide for the forfeiture of such property. Second, there is nothing in the legislative history relating to the adoption of Chapter 712A in 1988 which suggests that the legislature intended to eliminate or narrow the forfeiture authority provided by HRS § 199–7. Finally, the legislative history relating to an amendment to § 199–7 that the legislature adopted in 1989—one year *after* the adoption of Chapter 712A—shows that the legislature continued to intend that the provisions of § 199–7 would authorize the forfeiture of property used or taken in violation of Title 12 and the rules adopted thereunder.

### a. The legislative history of HRS § 199–7 from 1978 up to the adoption of Chapter 712A in 1988 demonstrates that the legislature intended § 199–7 to authorize forfeiture for violations of Chapter 12 and the rules adopted thereunder

In 1978, the legislature considered Senate Bill 2617–78, which was enacted into law as Act 171 and codified as HRS Chapter 199. 1978 Haw. Sess. L. Act 171, at 352. The House Committee on Finance stated that the intent of Senate Bill 2617–78 was "to consolidate and coordinate the enforcement of all rules and regulations covering all State lands and any other lands and waters subject to the jurisdiction of the [DLNR]." Hse. Stand. Comm. Rep. No. 784–78, in 1978 House Journal, at 1763. Act 171 provided in relevant part that "any equipment, article, or instrument used or possessed in violation of Title 12 and rules and regulations promulgated thereunder, is declared to be a public nuisance and subject to seizure ...," and "upon conviction of the person having control of such equipment, article or instrument for a violation of any provision of such laws or rules and regulations, the equipment, article or instrument may be declared by the court to be forfeited to the State." *Id.* at 354. This provision, which was codified as HRS

§ 199–7 (1978),[10] authorized the State to seize property used in violation of DLNR rules adopted under Title 12, and provided the court with discretion to forfeit property used in violating those rules.

In 1983, the legislature enacted Act 99, which amended § 199–7. *See* 1983 Haw. Sess.L. Act 99, at 171. Act 99 expanded the list of property subject to forfeiture under § 199–7 from "equipment, article[s], or instrument[s]," *see supra* note 10, to include "aircraft, vehicles, or vessels." 1983 Haw. Sess. L. Act 99, at 171. It also provided that forfeiture of such property would be "in accordance with the procedure set forth in the Hawaii Penal Code." [11] *Id.*

The committee reports on Senate Bill No. 362, which eventually became Act 99, reflect a clear understanding on the part of the legislature that the existing language of § 199–7 authorized forfeiture with regard to "equipment, article[s] and instrument[s]," and that the legislature intended to authorize forfeiture with respect to the additional items identified in Act 99. The Senate Committee on Ecology, Environment and Recreation observed that although DOCARE "may seize equipment, articles, or instruments used or possessed in the violation of these laws or rules[,]" "there are persons who continue to violate the conservation law and rules despite enforcement actions ... by [DOCARE]. Seizure of items used in the violative acts are [sic] therefore necessary to curtail such activity." Sen. Stand. Comm. Rep. No. 232, in 1983 Senate Journal, at 1143.

The House Committees on Water, Land Use, Development and Hawaiian Affairs and Judiciary noted that:

The purpose of this bill is to clarify the types of items subject to seizure and forfeiture when used or possessed in violation of Title 12, Hawaii Revised Statutes, and rules. . . .

Violations of Title 12, statutes, and rules in Hawaii continue to plague the Department of Land and Natural Resources despite its enforcement actions against violators. Examples of violations include the use of helicopters, commercial fishing vessels, and other vehicles used to hunt during night hours and to cart off game taken illegally.

Hse. Stand. Comm. Rep. No. 721, in 1983 House Journal, at 1174.

These reports confirm that the legislature recognized that although DOCARE had authorization to seize and forfeit "equipment, article[s] and instrument[s]," nevertheless violations of Title 12 continued, and that the seizure and forfeiture of additional items used or possessed in violation of Title 12 was an essential component of the DLNR's enforcement efforts to conserve and protect Hawai'i's natural resources.

b. **The legislative history relating to the enactment of HRS Chapter 712A in 1988 does not reflect any intent to narrow the effect of the provisions of HRS § 199–7**

In 1988, the legislature undertook a substantial revision of the forfeiture provisions in the penal code. House Bill No. 2080 was introduced and was eventually enacted into law as Act 260, 1988 Haw. Sess. L. Act 260,

---

10. HRS § 199–7 (1978) provided in pertinent part that:

Any equipment, article, or instrument used or possessed in violation of title 12 and rules and regulations promulgated thereunder, is declared to be a public nuisance and subject to seizure by any enforcement officer of the department of land and natural resources or by any police officer; and upon conviction of the person having possession or control of such equipment, article or instrument for a violation of any provision of such laws or rules and regulations, the equipment, article or instrument may be declared by the court to be forfeited to the State. Any property so forfeited shall be turned over to the department of land and natural resources and destroyed, if illegal,

or otherwise shall be sold at public auction in the judicial circuit in which it was seized[.]

11. There is nothing in the committee reports for Senate Bill No. 362, which became Act 99, that explains why the reference to the penal code was included. At the time that Act 99 became law in 1983, the penal code contained a provision relating to forfeiture, HRS § 701–119 (1976), which established procedures for forfeiture and provided that "[w]henever a forfeiture is provided for by this Code, or is otherwise provided for by the law relating to a particular offense or the enforcement of penal laws in general, the procedure for forfeiture shall be as set forth in this section, unless a different procedure is otherwise provided by law."

at 457, and was codified as HRS Chapter 712A. The purpose of House Bill No. 2080 was "to clarify the various offenses giving rise to forfeiture, the property subject to forfeiture, the procedures for forfeiture, and the disposition of forfeiture proceeds[,]" and to set forth exceptions to forfeiture for the protection of innocent third parties. Hse. Conf. Comm. Rep. No. 160–88, in 1988 House Journal, at 843 (discussing conference draft 2 of House Bill No. 2080). Act 260 repealed HRS § 701–119, and enacted the provisions in HRS § 712A–4 which were applicable when Claimants' property was seized in 2000. 1988 Haw. Sess. L. Act 260, at 458, 471. There is no indication in the legislative history that Chapter 712A was intended to alter the effect of HRS § 199–7 in any way. Hse. Conf. Comm. Rep. No. 160–88, in 1988 House Journal, at 843; *see* Hse. Stand. Comm. Rep. No. 2–88, in 1988 House Journal, at 849 (discussing House Bill No. 2080); Sen. Stand. Comm. Rep. No. 2636, in 1988 Senate Journal, at 1118 (discussing Senate Draft 1 of House Bill No. 2080); *see also* Hse. Conf. Comm. Rep. No. 153–88, in 1988 House Journal, at 839 (discussing conference draft 1 of House Bill 2080).

### c. Legislative history subsequent to the enactment of HRS Chapter 712A in 1988 reflects the legislature's continued understanding that HRS § 199–7 authorizes forfeiture for violations of HRS Title 12 and the rules adopted thereunder

In 1989 the legislature again amended HRS § 199–7. Act 122 restructured § 199–7 and provided that property seized would be "subject to forfeiture pursuant to chapter 712A," rather than HRS § 701–119, which had been repealed the previous year. 1989 Haw. Sess. L. Act 122, at 241. The legislature split § 199–7 into three subsections. Subsection (a) dealt with seizure, (b) with forfeiture, and (c) with creating an inventory of all property forfeited. *Id.* Most notably, the legislature added "natural resource[s]" to

the list of property subject to forfeiture.[12] *Id.* The committee reports on House Bill 405, which became Act 122, make clear that the legislature understood that by so doing, it was in fact authorizing the forfeiture of "natural resources," rather than merely delineating the powers of DOCARE officers and leaving for another day the specific authorization required by HRS § 712A–4(a).

The House Judiciary Committee's report on House Bill 405 notes that "[t]he purpose of this bill is to authorize the search, seizure and forfeiture of 'natural resources.'" Hse. Stand. Comm. Rep. No. 631, in 1989 House Journal, at 1064. The Committee also stated, in pertinent part:

> Your committee finds that the current statute does not contain provisions to authorize the search, seizure and forfeiture of archaeological artifacts, minerals, aquatic life, land plants and parts thereof including seeds. This bill allows the search, seizure and forfeiture of such "natural resources,"....

*Id.*

The report of the Senate Committee on Energy and Natural Resources noted:

> Current statutes do not contain provisions that authorize agents of the [DLNR] to execute their duties of managing, preserving and protecting natural resources by conducting searches and seizing archaeological artifacts, minerals, aquatic life, land plants and parts thereof. Further, there are no provisions for the forfeiture of such items. This bill provides the authority for searches, seizures, and forfeiture and will enable the [DLNR] to more effectively perform its duties.

Sen. Stand. Comm. Rep. No. 1037, in 1989 Senate Journal, at 1193; *see also* Sen. Stand. Comm. Rep. No. 1290, in 1989 Senate Journal, at 1284.

These committee reports make clear that the legislature intended to provide DLNR with the authority to seize and forfeit "natural resources." This intent, and its expres-

---

12. The legislature also added "business records" to the list of property subject to forfeiture. 1989 Haw. Sess. L. Act 122, at 241. There is nothing in the legislative history discussing that addition. *See* Hse. Stand. Comm. Rep. No. 631, in 1989 House Journal, at 1064; Sen. Stand. Comm. Rep. No. 1037, in 1989 Senate Journal, at 1193; Sen. Stand. Comm. Rep. No. 1290, in 1989 Senate Journal, at 1284.

sion in the amended language of HRS § 199-7, is inconsistent with Claimants' interpretation of HRS § 712A-4(a). Under Claimants' interpretation, the legislature's approach in 1989, i.e., including a single authorization for the seizure and forfeiture of natural resources in HRS § 199-7, would have been inconsistent with its purported intent in 1988 to require that such authorization appear in each individual statute or rule to which it applied.

 Claimants suggest that even if this is a correct interpretation of the legislative history, nevertheless it applies only to "natural resources" and is irrelevant to the legislature's intention with regard to the boat and other non-natural items at issue here. We disagree. The legislature's actions in amending HRS § 199-7 in 1989 can be utilized to interpret the language that it adopted when it enacted HRS Chapter 712A in 1988. *Bowers v. Alamo Rent-A-Car, Inc.*, 88 Hawai'i 274, 282, 965 P.2d 1274, 1282 (1998) (Ramil, J., concurring) ("we have often held that 'subsequent legislative history or amendments' may be examined in order to confirm our interpretation of statutory provisions") (citations omitted); *see also State v. Nakata*, 76 Hawai'i 360, 878 P.2d 699 (1994). Adopting Claimants' interpretation of these statutes would separate the list of forfeitable items included in HRS § 199-7 into two categories: one consisting of "natural resources" whose forfeiture would be in fact authorized, and the second consisting of "equipment, article[s], instrument[s], aircraft, vehicle[s], vessel[s], [or] business records" whose forfeiture may be sought by DLNR officers, but which would require more specific authorization before forfeiture could actually take place. This would be an incongruous result, and one which we do not believe the legislature intended.

## CONCLUSION

Both the plain language of HRS § 199-7 and Chapter 712A, together with the legislative history of those provisions, establish that the legislature intended to authorize the forfeiture of property used to violate rules adopted pursuant to Title 12 such as those at issue here. Accordingly, the circuit court erred in dismissing the State's petition. As a result, we vacate (1) the February 1, 2002 Order Granting Claimants/Interested Persons Dang Van Tran and Sang Tran's Motion to Dismiss Verified Petition, Filed March 29, 2001 (Filed November 30, 2001); (2) the December 6, 2004 Judgment for Claimants Dang Van Tran and Sang Tran and Against Petitioner Peter B. Carlisle, and (3) the January 20, 2005 Order Granting in Part and Denying in Part Claimants/Interested Persons Dang Van Tran and Sang Tran's Motion to Strike Judgment Filed December 6, 2004, or in the Alternative, Amend Judgment to Correct Errors and Enter Judgment Nunc Pro Tunc, Effective February 1, 2002, and remand this case for proceedings consistent with this opinion. We express no opinion on the merits of the petition.

